[No. 6168. Decided July 17, 1906.]

THE STATE OF WASHINGTON, *Respondent*, v. HARRY CONSTATINE, *Appellant*.[1]

CRIMINAL LAW—INTOXICATING LIQUORS—SALE TO MINORS BY AGENT. A saloonkeeper is guilty of selling liquor to a minor, where the sale was made by his barkeeper, although defendant was out of town at the time the sale was made and had no knowledge thereof.

CRIMINAL LAW—TRIAL—REOPENING CASE. It is discretionary to reopen a case for further testimony upon defendant's motion for a directed verdict.

CRIMINAL LAW—INTOXICATING LIQUORS—SALE TO MINORS—INSTRUCTIONS. Instructions properly stating the policy of the law and the theory of the prosecution of a principal for the act of his agent in selling liquor to a minor, should be refused, but are harmless when the jury is instructed that the saloonkeeper is responsible for the acts of his bartender.

SAME—KOWLEDGE. Instructions as to whether a sale of liquor to a minor were knowingly made are proper, if they require that the defendant knew, or had such information from his appearance as would lead a prudent man to believe, if followed by inquiry, that the buyer was a minor.

Appeal from a judgment of the superior court for Chelan

1Reported in 86 Pac. 384.

county, Steiner, J., entered October 3, 1905, upon a trial and conviction of the offense of selling liquor to a minor. Affirmed.

*Dill & Thomas,* for appellant.

*Crass & Corbin* and *Henry Crass* (*The Attorney General* and *E. C. Macdonald, Assistant,* of counsel), for respondent.

RUDKIN, J.—The appellant was convicted of the crime of knowingly selling intoxicating liquors to a minor without the written consent of the parent or guardian, and from the judgment and sentence of the court, this appeal is prosecuted.

The material facts are as follows: For some time prior to the 26th day of August, 1905, the appellant was the owner of a saloon in the city of Wenatchee, and was regularly licensed to sell intoxicating liquors by the municipal authorities. On the above date one James Dunlap, a bartender and servant of the appellant, sold a glass of beer to Norman Turner, a minor of the age of seventeen years, without the written consent of the parent or guardian of such minor. At the time of this sale the appellant was absent from the city of Wenatchee, and had no notice or knowledge of the sale. The fact that the sale was made through an agent appeared on the face of the information, and upon this ground a demurrer was interposed. The demurrer was overruled, and upon the trial the appellant offered to prove that he had instructed his bartenders and servants not to sell liquor to minors nor allow them in the saloon. To this offer an objection was interposed and sustained. At the close of the state's case, the appellant requested the court to instruct the jury to return a verdict of not guilty, for the reason that it appeared from the uncontradicted testimony that no sale had been made by the appellant, but the request was refused. At the close of all the testimony, the appellant again requested the court to instruct the jury that they must find that the sale was made by the appellant before they could return a verdict of guilty, but this request was likewise refused. These sev-

eral rulings gave rise to the principle assignments of error, and may properly be considered together.

It is undoubtedly a general rule of law that there can be no crime without a criminal intent, and that one man is not criminally responsible for the acts of another, even though such other be his agent or servant, unless something more than the mere relation of master and servant is shown, but there are many exceptions to the rule. As said by the court in *People v. Roby*, 52 Mich. 577, 18 N. W. 365, 50 Am. Rep. 270, speaking through Cooley, Chief Justice,

"I agree that as a rule there can be no crime without a criminal intent, but this is not by any means a universal rule. One may be guilty of the high crime of manslaughter when his only fault is gross negligence, and there are many other cases where mere neglect may be highly criminal. Many statutes which are in the nature of police regulations as this is, impose criminal penalties, irrespective of any intent to violate them, the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible."

*In People v. Lundell,* 136 Mich. 303, 99 N. W. 12, the same court says:

"The contention that the respondent is not responsible for the act of his barkeeper in keeping his saloon open, but that the barkeeper is the only offender, has been answered too often to leave it necessary to discuss the question at any length. The court has frequently held that this statute imposes upon the keeper of a bar or saloon the affirmative duty to see that it is closed during certain hours and on holidays, and that the neglect of this duty is an offense."

In *Carroll v. State,* 63 Md. 551, the court said:

"When the agent, as in this case, is set to do the very thing which, and which only, the principal's business contemplates, namely, the dispensing of liquors to purchasers, the principal must be chargeable with the agent's violation of legal restriction on that business. His gains are increased, and he must bear the consequences. The fact that he has given orders not to sell to minors only shows a *bona fide* intent to obey the

law, which all the authorities say is immaterial in determining guilt."

See, also, *State v. Kittelle,* 110 N. C. 560, 15 S. E. 103, 28 Am. St. 698, 15 L. R. A. 694; Wharton, Criminal Law (10th ed.), § 1503, and cases cited. There was therefore no error in the several rulings complained of.

When the state first rested its case, the appellant interposed a motion for a directed verdict. The court thereupon reopened the case and permitted the state to offer further testimony. This ruling is assigned as error. The reopening of a case for further testimony after a motion of this kind has been interposed rests in the sound discretion of the trial court, and no abuse of discretion is shown here.

Exceptions were taken to nearly all of the instructions of the trial court, twenty-two in number. The second instruction excepted to merely sets forth the charge in the language of the information. The seven succeeding instructions are of similar import. The fourth and fifth are fair samples of the rest, and are in the following language:

"4. This prosecution proceeds upon the theory that the physical and mental identity of Dunlap the servant, is merged in that of Constatine the master, that these two persons are, for the purposes of the law, but one person, and that that person is Constatine the master. In other words, that where Dunlap sells liquor for Constatine, under a liquor license issued to Constatine, that Dunlap's hand is Constatine's hand, that Dunlap's mind is Constatine's mind, and that Dunlap's acts and knowledge are Constatine's acts and knowledge.

"5. This theory of the law is based upon the doctrine that where a license to sell liquor is granted to A no one whomsoever has any lawful right to sell any liquor whatever under such license except A himself, and that if he desires to relieve himself from giving personal attention to the business by employing B to do it for him, and thus sets B to doing that which the law only authorizes A to do, then it can only be lawfully permitted on the theory that B, in legal contemplation becomes A himself, for if it were otherwise

B would violate the law as well when he sold to persons entitled to buy as when he did not."

These requests should have been refused. The jury had no concern with the theory of the prosecution, or with the theory of the law or the policy of the law. It was enough for them to know that the saloon keeper is responsible for the acts of his bartender, and this they might have been told in a single sentence. But while the instructions were out of place and might better have been omitted, we cannot see that they were prejudicial.

The tenth instruction correctly states the issues in the case. The twelfth instruction relates to the presumption of innocence and is, we think, free from objection. The thirteenth instruction defines a reasonable doubt in substantially the language of this court. The fourteenth, fifteenth and sixteenth instructions defined the term "knowingly" as used in the statute. The substance of these instructions is that if Dunlap knew that Turner was a minor, or had such information, from his appearance or otherwise, as would lead a prudent man to believe that he was a minor, and if followed by inquiry must bring knowledge of that fact home to him, then the sale was made knowingly; and we think this is a correct statement of the law.

The evidence is sufficient to sustain the verdict, and the judgment is accordingly affirmed.

MOUNT, C. J., FULLERTON, HADLEY, DUNBAR, CROW, and ROOT, JJ., concur.