[No. 18221.   Department Two.   December 21, 1923.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE
MANOLIS, *Appellant*.[1]

GAMING (17)—EVIDENCE—SUFFICIENCY.  A conviction of opening,
conducting and carrying on a gambling game, under Rem. Comp.
Stat., § 2469, is sustained by proof that a poker game was played in
the accused's place of business operated directly for his benefit by
his employee who took for him a percentage of the amount wagered.

SAME (9)—STATUTES—CONSTRUCTION.  It is not necessary to sus-
tain a conviction of being a common gambler, under Rem. Comp.
Stat., § 2469, that the proprietor of a place, participating in a game
of poker, operated it for his own direct profit; it being enough if he
operated it as owner or manager.

SAME (18)—TRIAL—INSTRUCTIONS.  In a prosecution for gaming
under Rem. Comp. Stat., § 2469, it is proper to instruct that it is not
material whether the stakes be great or small.

Appeal from a judgment of the superior court for
Clarke county, Simpson, J., entered March 13, 1923,
upon a trial and conviction of conducting a gambling
game.   Affirmed.

*Crass & Hardin*, for appellant.
*Jos. E. Hall* and *Dale McMullen*, for respondent.

FULLERTON, J.—The statute relating to gambling
contains, among others, the following provision: (Rem.
Comp. Stat., § 2469) [P. C. § 8926].

"Every person who shall open, conduct, carry on or
operate, whether as owner, manager, agent, dealer,
clerk, or employee, and whether for hire or not, any
gambling game or game of chance, played with cards,
dice, or any other device, or any scheme or device
whereby any money or property or any representative
of either, may be bet, wagered or hazarded upon any
chance, or any uncertain or contingent event, shall be
a common gambler, and shall be punished by imprison-

[1]Reported in 221 Pac. 326.

ment in the state penitentiary for not more than five years."

The defendant, George Manolis, was convicted by the verdict of a jury on an information charging a violation of the statute, and appeals from the judgment and sentence pronounced upon him.

To support the charge laid in the information, the state introduced evidence tending to show that, on the evening of the day named in the information, and for some time prior thereto, Manolis conducted in the city of Vancouver, Washington, a business known as the Log Cabin Cafe. On one side of the main room of the building in which the business was conducted was a lunch counter, and back of it the usual fixtures for cooking and preparing lunches and other meals. In the room were billiard and pool tables and tables suitable for playing card games. In front was a tobacco counter, and also a place for shining shoes. The entire establishment was the property of Manolis. It was shown that, on the particular evening, two games of cards, commonly known as stud-poker, were opened and carried on in the main room of the building; that one of these was operated by an employee of Manolis and the other by Manolis himself; that, on each of the several hands played, poker chips were wagered, having a representative value of two cents each; and that these were purchased from Manolis or his employee by the players at their representative values prior to their use in the game. At the table operated by the employee, there is direct testimony that a percentage of the amount wagered was taken from the amount bet on each particular hand for the benefit of the proprietor of the place, and there was evidence that Manolis himself, in similar games conducted on prior occasions, had taken like percentages, but no evidence that he did so on this occasion.

If we have correctly gathered the contention of the appellant, it is that a proprietor of a place of the sort here described is not guilty of a violation of the section of the statute on which the information is based by merely permitting his guests to play at a game of chance for money or the representative of money, or to play with them at such a game. That, to constitute an offense within the meaning of the statute, there must be a wagering between the person who opens up and conducts the game on the one side and the persons who play at the game on the other; in other words, it must be shown that the proprietor opens, conducts, carries on or operates the game as owner or manager for his direct profit or benefit; the further contention being that the evidence here goes no farther than to show that Manolis played at a game of chance in which all of the players were equally proprietors.

But we are unable to take this view of the evidence. Conceding that it is not an offense for a group of persons to play at a game of chance in which no one of the players in particular opens, conducts or operates the game, and concerning which it can be said that all of the persons are equally operators, we cannot concede that either of these was such a game. The evidence clearly warrants the conclusion that each of them was opened, conducted, carried on and operated as owner and manager, either by Manolis himself or by his employee under his direction. It further shows that one of these games was operated directly for Manolis' benefit; that he, as the proprietor of the establishment, took a certain percentage of the amount wagered, whether won by the operator of the game or not. If, therefore, it be the rule that it is not sufficient to show merely the opening, carrying on and operating of such a game as owner or manager, without further showing that it was so opened, conducted,

carried on or operated for the direct profit of the owner, there was here such a showing. Manolis was responsible for the acts of his employee, and cannot escape the penalty of the statute by showing that he did not personally participate in the game. *State v. Constatine,* 43 Wash. 102, 86 Pac. 384, 117 Am. St. 1043; *State v. Moser,* 94 Wash. 465, 162 Pac. 582; *State v. Kaukos,* 109 Wash. 20, 186 Pac. 269.

But it is not our view of the statute that the game proscribed must be operated for the direct profit of the owner or manager. It is enough, we think, to show that he operated it as owner or manager. The object of the statute is to suppress gambling resorts and to punish those who maintain them. Clearly, the showing is that Manolis maintained the place and maintained therein games in the manner which the statute prohibits. He was, therefore, the common gambler which the statute was intended to punish. *State v. Preston,* 49 Wash. 298, 95 Pac. 82; *State v. Burns,* 54 Wash. 113, 102 Pac. 886; *State v. Gaasch,* 56 Wash. 381, 105 Pac. 817; *State v. Hardwick,* 63 Wash. 35, 114 Pac. 873; *State v. Robey,* 74 Wash. 562, 134 Pac. 174.

The court charged the jury, in substance, that it was not material to the appellant's guilt that the stakes wagered upon the game were great or small, and this is complained of as error by the appellant. We think, however, that it is a correct statement of the law. The thing aimed at by the statute is the maintenance of the resort, not the value of the stakes which may be wagered on the games conducted therein.

The judgment is affirmed.

MAIN, C. J., BRIDGES, MITCHELL, and PEMBERTON, JJ., concur.