[No. 35715.    Department One.    March 23, 1961.]

Overlake Homes, Inc., *Appellant,* v. Seattle-First
National Bank, *Respondent.*[1]

¹Reported in 360 P. (2d) 570.

*Rummens, Griffin, Short & Cressman,* for appellant.

*Howe, Davis, Riese & Jones,* for respondent.

ROSELLINI, J.—This is an action by a depositor to recover money which the defendant bank paid out on checks bearing allegedly forged signatures and charged against the plaintiff's account. The complaint was dismissed on motion of the defendant.

According to the allegations of the complaint, the plaintiff, a corporation, maintained at the Mercer Island Branch of the defendant or its predecessor, Washington State Bank, a commercial checking account subject to withdrawal only upon presentment of checks bearing the signatures of any two of its officers, all of whose signatures were furnished the bank on one of its signature cards.

During the period from July 11, 1956, to June 18, 1959, there were charged to the plaintiff's account some forty-two checks in the aggregate amount of $13,365.88, which bore the signature of W. H. Brokaw and the forged signature of either Roy C. Allen or William W. Renton, Jr. At all times material to this action, Brokaw was the president or secretary-treasurer of the plaintiff corporation. Allen and Renton were also officers. By affidavit, Brokaw declared that the proceeds of the checks were used for the benefit of the plaintiff corporation. For purposes of the motion to dismiss, this allegation was deemed denied.

The defendant mailed monthly statements, with cancelled checks, to the plaintiff at its registered address, which happened also to be the address of Brokaw, who received

the statements. It was alleged that the plaintiff did not discover the forgeries until on or about December 1, 1959, at which time it notified the defendant of the forgeries and demanded restoration of the aggregate sum paid out on the checks containing allegedly forged signatures which had been charged against its account. Upon the refusal of the defendant bank to repay or credit this sum to the plaintiff's account, this action was commenced. The defendant moved to dismiss, on the ground that the plaintiff had failed to comply with the requirements of RCW 30.16.020, which provides:

"No bank or trust company shall be liable to a depositor for the payment by said corporation of a forged or raised check, unless within sixty days after the return to the depositor of the voucher of such payment, such depositor shall notify said corporation that the check so paid was raised or forged [1955, c 33  . . .]"

This motion was granted, and the plaintiff has appealed, contending that, as applied to it, the provision is unconstitutional.

As we understand the plaintiff's argument, it is based upon a theory that the statute amounts to a deprivation of property without due process of law, because it departs arbitrarily from the rule which prevailed at common law. Under that rule, as the plaintiff points out, a bank was not entitled to charge against the account of one of its depositors, sums which it had paid out on a forged check, unless the depositor had failed to report the forgery to the bank within a reasonable time after he had discovered it, or should have discovered it, in the exercise of reasonable care, in which event the bank could recover from the depositor any damages which it had suffered as a result of the depositor's negligence. If the bank was itself negligent, however, this recovery was not allowed.

It will be seen that the legislature, in enacting the above statute, prescribed a time limit, within which the depositor must examine his vouchers and determine whether they are in order, and, if there has been a forgery, report it to the bank. After that period of time has elapsed, the depositor

cannot recover, even though the bank has been negligent.

The question is, was the enactment of this statute a proper exercise of the police power?

It is well settled that, inasmuch as banks are indispensable agencies through which the industry, trade, and commerce of all civilized countries and communities are carried on, the business which they transact, though for private profit, is of a pre-eminently public nature, and is therefore universally recognized as a proper subject of legislative regulation under the police power of the state. Many cases so holding are cited in 7 Am. Jur. 30, § 9, and 9 C. J. S. 32, § 4. The principle was recognized by this court in *Raynor v. Scandinavian-American Bank*, 122 Wash. 150, 210 Pac. 499, 25 A. L. R. 716. As a consequence of the fact that the banking business is subject to the police power, the rights of all persons having a direct contact with that business may be altered and changed in a reasonable manner. *In re Mechanics Trust Co.*, 119 N. J. Eq. 141, 181 Atl. 423 (1935); *State ex rel. Zimmerman v. Gibbes*, 171 S. C. 209, 172 S. E. 130 (1933).

Other applicable and fundamental principles are that the state constitution is not a grant, but a restriction on the law-making power, and the power of the legislature to enact all reasonable laws is unrestrained except where, either expressly or by fair inference, it is prohibited by the state and federal constitutions. Where the validity of a statute is assailed, there is a presumption of the constitutionality of the legislative enactment, unless its repugnancy to the constitution clearly appears or is made to appear beyond a reasonable doubt. Where possible, it will be presumed that the legislature has affirmatively determined any special facts requisite to the validity of the enactment, even though no legislative finding of fact appears in the statute. *Clark v. Dwyer*, 56 Wn. (2d) 425, 353 P. (2d) 941, and cases cited therein.

It is also axiomatic that no person has a vested interest in any rule of the common law. *Shea v. Olson*, 185 Wash. 143, 53 P. (2d) 615, 111 A. L. R. 998. The statute here was in effect when the plaintiff opened its account and de-

posited its funds with the defendant's predecessor bank, and it contracted with the bank subject to the terms of the act. *McIlvaine v. City National Bank & Trust Co. of Chicago*, 314 Ill. App. 496, 42 N. E. (2d) 93 (1942). That act did not deprive the plaintiff of any right which it hitherto had, and it was well within the power of the legislature to change the common law. As the supreme court of the United States said, in the opinion of Mr. Justice Waite, in *Munn v. Illinois*, 94 U. S. 113, 134, 24 L. Ed. 77,

" . . . A person has no property, no vested interest, in any rule of the common law. That is only one of the forms of municipal law, and is no more sacred than any other. Rights of property which have been created by the common law cannot be taken away without due process; but the law itself, as a rule of conduct, may be changed at the will, or even at the whim, of the legislature, unless prevented by constitutional limitations. Indeed, the great office of statutes is to remedy defects in the common law as they are developed, and to adapt it to the changes of time and circumstances. . . . "

It must be presumed that the legislature determined that to promote the orderly and efficient conduct of the banking business, the duties of depositors, and the liabilities of banks should be defined more specifically than they were at common law. Although the plaintiff insists that under certain circumstances the sixty-day limitation could be harsh and unreasonable, it has not suggested what those circumstances might be. Certainly, in the plaintiff's case, the law does not operate unjustly. Although the alleged forgeries continued for a period of three years, and the vouchers were sent to the office of the company, where its officers presumably had every opportunity to examine them, evidently no examination was made until five months after the last forgery. The plaintiff offers no explanation for this failure, and it is difficult to conceive that, even under the common law rule, a trier of the facts would find the plaintiff free of negligence.

We conclude that the statute, RCW 30.16.020, was enacted in the proper exercise of the police power, and did not deprive the plaintiff of any property or other right.

Since its provisions were not complied with in this instance, the action was properly dismissed.

The judgment is affirmed.

MALLERY, WEAVER, OTT, and HUNTER, JJ., concur.

