Darwin Evert COON, Appellant,

v.

UNITED STATES of America,
Appellee.

No. 18057.

United States Court of Appeals
Eighth Circuit.

May 12, 1966.

Charles R. Wolle, Sioux City, Iowa, for appellant.

Richard J. Vipond, Asst. U. S. Atty., Sioux City, Iowa, for appellee and on brief with Donald E. O'Brien, U. S. Atty., and Charles W. Ehrhardt, Asst. U. S. Atty., Sioux City, Iowa.

Before MATTHES, MEHAFFY and GIBSON, Circuit Judges.

MATTHES, Circuit Judge.

A jury found Darwin Evert Coon, appellant, guilty of violating Title 18 U.S. C.A. § 2113(e).[1] The court entered judgment imposing a prison sentence of twenty years and provided further that appellant shall become eligible for parole at such time as the Board of Parole may determine pursuant to Title 18 U.S.C.A. § 4208(a) (2).[2]

The facts antedating the filing of the indictment are significant.

The offenses, footnote 2, supra, were committed on August 20, 1958, by appellant and George Albert Mills. The offenders were apprehended shortly after the commission of the crimes. Lawyers were appointed by the court to represent them. On September 30, 1958, after arraignment, they waived prosecution by indictment and on that day a four-count information was filed in the United States District Court for the Northern District of Iowa, alleging commission of the same four offenses charged in the indictment returned in this prosecution. Coon and Mills entered a plea of guilty and received concurrent sentences of twenty years, ten years, twenty years, and twenty years, on Counts I, II, III and IV, respectively, of the information.

On September 6, 1963, more than five years after the offenses had been committed, appellant, while serving a tenyear sentence for jail break and assault, filed a motion in the nature of a writ of error coram nobis, to set aside the judgment and sentence of September 30, 1958.[3]

1. Section 2113(e) provides, in pertinent part:
"Whoever in committing any offense defined in this section * * * forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or punished by death if the verdict of the jury shall so direct."

2. Appellant was prosecuted under an indictment filed on January 17, 1964, which alleged four offenses: (1) entering the Corn Belt State Bank of Correctionville Iowa, on August 20, 1958, with intent to commit larceny therein, in violation of Title 18 U.S.C.A. § 2113(a); (2) stealing approximately $2,795 from the bank, in violation of § 2113(b); (3) assaulting and placing in jeopardy the life of Peter Stoltz Hart, by the use of dangerous weapons while committing the offenses alleged in Counts I and II, in violation of § 2113(d); (4) forcing Hart to accompany appellant without Hart's consent while committing the offenses alleged in Counts I, II and III in violation of § 2113(e).

3. The original files reveal that after appellant and Mills were apprehended for the offenses growing out of the bank larceny and kidnapping event, they were

Coon urged that he had been charged with and convicted of a capital offense (18 U.S.C.A. § 2113(e)), and relying upon Rule 7(a) F.R.Crim.P.; Smith v. United States, 360 U.S. 1, 79 S.Ct. 991, 3 L.Ed. 2d 1041 (1959), and other cases, contended that prosecution by indictment, rather than by information, was a prerequisite to the court's power to hear the case. The district court agreed. On October 21, 1963, the judgment and sentence of September 30, 1958, was vacated.

After the indictment herein was filed, the court appointed lawyers to represent appellant. They filed a motion to quash the indictment on the ground that prosecution of the four alleged offenses was barred by the five-year statute of limitations, Title 18 U.S.C.A. § 3282. After due consideration, the court, The Honorable William C. Hanson, in a memorandum opinion (unreported), held that Counts I, II and III of the indictment were barred, and dismissed those counts. The court further found, however, that Count IV was not barred because this count charged a capital offense and was not within the ambit of the five-year statute of limitations.

On this appeal, appellant contends: (1) the court erred in denying his motion for judgment of acquittal for the reason that the evidence failed to prove that appellant forced banker Hart to accompany him, without Hart's consent, to the bank in order that appellant could enter and commit larceny therein; (2) the prosecution is barred by the five-year statute of limitations; (3) the indictment, trial and sentence constitute double jeopardy; (4) the judgment entered by the court is illegal. We affirm.

placed in a jail in Sioux City, Iowa. On August 23, 1958, Coon and Mills attempted a jail break and viciously assaulted and severely injured the jailer. They were prosecuted for these offenses in the United States District Court and under judgment of conviction appellant was sentenced to ten years imprisonment. He had not completed service of this sentence at the time he attacked the judgment of conviction of September 30, 1958.

## SUFFICIENCY OF THE EVIDENCE

In resolving the question of whether a submissible case was made, we are required to view the evidence in the light most favorable to the prevailing party; i. e., we must determine whether the evidence in its most favorable aspect to the Government is legally capable of allowing a jury to be persuaded of guilt. National Dairy Products Corp. v. United States, 350 F.2d 321, 325 (8 Cir. 1965); Beatrice Foods Co. v. United States, 312 F.2d 29, 40 (8 Cir. 1963), cert. den., 373 U.S. 904, 83 S.Ct. 1289, 10 L.Ed.2d 199. So viewing the record, we conclude, without hesitation, that the case was properly submitted to the jury and that the jury's verdict is responsive to the evidence. Indeed, the evidence of guilt was strong and convincing.

Appellant and Mills escaped from Nevada State Prison on August 11, 1958, where they had been imprisoned for burglary and armed robbery.[4] They went to Correctionville, Iowa, for the avowed purpose of burglarizing or robing Cotton Belt State Bank. After gaining entrance into the home of Peter Stoltz Hart, President of the bank, on the evening of August 20, 1958, appellant exhibited a loaded 45-caliber pistol and Mills an opened switchblade knife. Hart and his wife were threatened, their hands and feet were tied and a "gag" was placed in Mrs. Hart's mouth. Under threats of bodily harm, Hart furnished Mills the correct combinations to the bank vault. While Mr. and Mrs. Hart were held captive by appellant, Mills went to the bank and tried, without success, to open the vault. He returned

4. Testifying in his own behalf, appellant admitted that he had previously been convicted of the following offenses: May 11, 1951, robbery in California; October 28, 1952, robbery; March 9, 1955, interstate transportation of stolen property; October 7, 1957, robbery in Nevada; September 30, 1958, escape from the Woodbury County (Sioux City) Jail.

to the Hart home in an angry mood, apparently believing that Hart had furnished him incorrect combinations. Hart, under fear of bodily harm, offered to go to the bank to open the vault. Instead of accepting this offer, appellant went to the bank, leaving the Harts as captives of Mills. Appellant too was unable to open the vault and upon his return he and Mills decided that Hart should be taken to the bank. This was done. Hart drove his automobile, and appellant, with the loaded pistol in his hand, sat next to Hart. Mills remained and kept Mrs. Hart under guard. After Hart opened the vault in the presence of appellant, who was still armed, they returned to the Hart home. Mr. and Mrs. Hart were taken to a bedroom, tied up again, and thereupon appellant and Mills left the Hart home. Appellant and Mills returned to the bank and took all of the available silver money, which amounted to approximately $2,795.

All of the above facts were established by the testimony of Government witnesses. Appellant did not deny being in the Hart home and holding the Harts as captives by use of the pistol and knife. He attempted, by his testimony, to convince the jury that Hart freely and voluntarily accompanied appellant to the bank and opened the vault doors. The jury obviously did not accept appellant's version and neither do we. Overwhelming evidence was introduced to prove that appellant and Mills resorted to force. Not only were Mr. and Mrs. Hart physically mistreated but they were subjected to threats of bodily harm during their three hours of captivity. Psychological coercion was exerted by the display of deadly weapons. Mr. Hart testified that "everything was against my will". Certainly a jury could reasonably find that Hart's offer to go to the bank, the ensuing trip, and his opening of the vault doors, resulted entirely from fear

induced by a display of the knife and gun, and that he was forced to accompany appellant. Quite understandably, Hart would have taken any action to prevent bringing harm to his wife and himself. In summary, the evidence irresistibly points to the conclusion that Hart was forced to accompany appellant, without consent, in order to enable appellant to unlawfully enter the bank and to commit larceny therein.

## STATUTE OF LIMITATIONS

Appellant contends that the prosecution is barred by the five-year statute of limitations. The statutes in question provide:

§ 3281. "An indictment for any offense punishable by death may be found at any time without limitation except for offenses barred by the provisions of law existing on August 4, 1939."

§ 3282. "Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, *not capital,* unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." (Emphasis supplied).

Appellant's position is that since the death penalty was not assessed under § 2113(e), the crime is not a "capital offense" within the meaning of the above statutes and is consequently subject to the five-year statute of limitations, § 3282. In contending for application of the five-year statute, appellant has conveniently changed his theory and argues in direct contradiction to the proposition he successfully urged in support of his writ of error coram nobis to set aside the first conviction; i. e., that the offense of which he was charged and convicted under § 2113(e) was a capital offense.[5]

5. In his application for writ of error coram nobis and argument in support thereof, appellant alleged that the " * * * information charged petitioner with an offense punishable by death under Section

2113(e) of Title 18 United States Code * * *. It is plain * * * that petitioner was charged by information with a capital offense * * *."

Thus, the question is: do the courts look to the charge as laid in the indictment or to the ultimate result of the trial in determining whether the offense under § 2113(e) is punishable by death within the meaning of the no-limitations statute?

■■ It is beyond dispute that when an accused is charged, as here, with forcing a person to accompany him, without the consent of such person, he is charged and may be tried for an offense that may be punished by death.[6] To be sure, the jury must so direct before the extreme penalty can be assessed, but that circumstance does not alter the fact that the offense itself is one which may subject the offender to death. As we have seen, the no-limitation statute, § 3281, provides: "An indictment for any offense *punishable* by death may be found at any time without limitation", etc.[7] The clear and ordinary meaning of 'the words unquestionably encompasses any offense for which the death penalty may be imposed.

To hold, as appellant contends, that the death penalty must actually be assessed before an offense becomes "capital" within the meaning of the statutes under consideration, would lead to the absurd result of subordinating the administration of criminal justice to a formula that would dictate either death or freedom in all offenses proscribed by § 2113(e) where the indictment has not been found within five years from the date the offense was committed or from the date the five-year statute became operative.

We have carefully examined the authorities relied upon by appellant, United States v. Parrino, 180 F.2d 613 (2 Cir. 1950); People v. Turner, 31 Ill.2d 197, 201 N.E.2d 415 (1964); Walker v. State, 137 Ark. 402, 209 S.W. 86, 3 A.L.R. 968 (1919), and do not regard them as dispositive of our case. In our view, Smith v. United States, supra, 360 U.S. 1, 79 S.Ct. 991 (1959), a case arising under the Federal Kidnapping Act, 18 U.S.C.A. § 1201,[8] is analogous in principle. The Government, in a not dissimilar argument as the one urged here by the appellant, contended that a pretrial examination of the evidence must be made to determine whether the victim was released harmed before a specific kidnapping offense is "capital" for the purposes of Rule 7(a) of the F.R.Crim.P. and the mandate of the Fifth Amendment.[9]

The Supreme Court forcefully rejected this contention, Chief Justice Warren, in speaking for the majority, made these pronouncements:

"When an accused is charged, as here, with transporting a kidnapped victim across state lines, he is charged and will be tried for an offense which *may* be punished by death. Although the imposition of that penalty will depend on whether sufficient proof of harm is introduced during the trial, that circumstance does not alter the fact that the offense itself is one which

---

6. The charging part of Count IV of the indictment conformed to § 2113(e). The elements of the charge were submitted to the jury in instructions which also required the jury to recommend for or against the assessment of the death penalty. It recommended against that penalty.

7. Webster's Third New International Dictionary, Unabridged, defines "punishable" to mean "deserving of, or liable to, punishment: capable of being punished by law or right."

8. (a) Whoever knowingly transports in interstate * * * commerce, any person who has been unlawfully * * * kid-

napped * * * shall be punished (1) by death if the kidnapped person has not been liberated unharmed, and if the verdict of the jury shall so recommend, or (2) by imprisonment for any term of years or for life, if the death penalty is not imposed.

9. Rule 7(a) of the F.R.Crim.P. provides: "An offense which may be punished by death shall be prosecuted by indictment * * *."

The Fifth Amendment provides in part: "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, * * *."

*may* be punished by death and thus must be prosecuted by indictment. In other words, when the offense as charged is sufficiently broad to justify a capital verdict, the trial must proceed on that basis, even though the evidence later establishes that such a verdict cannot be sustained because the victim was released unharmed. It is neither procedurally correct nor practical to await the conclusion of the evidence to determine whether the accused is being prosecuted for a capital offense. For the trial judge must make informed decisions prior to trial which will depend on whether the offense may be so punished."

See also, Kees v. United States, 304 F.2d 661 (7 Cir. 1962).

Although *Smith* did not posit the limitations issue, the rationale of the court in reaching the conclusion that the language of the charge controls in determining whether an accused has the constitutional right to be prosecuted by indictment does, in our view, apply to the question before us.

Appellant supports his contention that the offense is barred with the argument that imposition of the death penalty, under the facts of the case, would have constituted cruel and unusual punishment prohibited by the Eighth Amendment to the Constitution; that, therefore, the offense cannot be constitutionally characterized as capital for the purpose of the no-limitations statute.

■ The action of Congress in fixing punishment for crime is, of course, subject to the constitutional requirement that the penalty may not be cruel and unusual; i. e., so manifestly disproportionate to the seriousness of the offense or of such a nature that it shocks the conscience and sense of justice. Weems v. United States, 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910). The courts, however, have been reluctant to interfere with legislative judgment and discretion unless the penalty prescribed is clearly and manifestly ·cruel and unusual. Bailey v. United States, 74 F.2d 451 (10 Cir. 1934).

■ After careful consideration of the appellant's contention, we are satisfied that there is no rational basis for holding that the death penalty for an offense under § 2113(e) is not within constitutional standards. See and compare, Trop v. Dulles, 356 U.S. 86, 78 S.Ct. 590, 2 L.Ed.2d 630 (1958); Hess v. United States, 254 F.2d 578, 585 (8 Cir. 1958); United States ex rel. Melton v. Hendrick, 330 F.2d 263 (3 Cir. 1964); Jackson v. Dickson, 325 F.2d 573, 575 (9 Cir. 1963), cert. den. 377 U.S. 957, 84 S.Ct. 1637, 12 L.Ed.2d 501.

## DOUBLE JEOPARDY

■ Although appellant contends that the reindictment and second judgment and sentence constitute double jeopardy, he frankly concedes "that the weight of authority supports the court's ruling."

In the recent case of United States v. Ewell and Dennis, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (Feb. 23, 1966), the Supreme Court stated:

"It has long been the rule that when a defendant obtains a reversal of a prior, unsatisfied conviction, he may be retried in the normal course of events. United States v. Ball, 163 U.S. 662, 671–672, 16 S.Ct. 1192, 1195, 41 L.Ed. 300, United States v. Tateo, 377 U.S. 463, 465, 473–474, 84 S.Ct. 1587, 12 L.Ed.2d 448. The rule of these cases, which dealt with the Double Jeopardy Clause, has been thought wise because it protects the societal interest in trying people accused of crime, rather than granting them immunization because of legal error at a previous trial, and because it enhances the probability that appellate courts will be vigilant to strike down previous convictions that are tainted with reversible error. United States v. Tateo, supra, at 466, 84 S.Ct. at 1587."

The contention is rejected.

## ILLEGAL SENTENCING

■ The judgment of conviction entered on May 20, 1965, provided that

appellant shall become eligible for parole at such time as the Board of Parole may determine pursuant to § 4208(a) (2).[10] Appellant asserts that the court erred in overruling his "motion to vacate the sentence * * * which was illegal because of the inclusion of an unauthorized provision governing eligibility for parole". More specifically, the appellant contends that the provisions of Title 18 U.S.C. § 4208(a) (2) are not applicable to a § 2113(e) offense for the reason that this offense carries a mandatory minimum penalty of ten years.

At the time of imposition of sentence, Judge Hanson fully explained to appellant and his counsel the purpose of § 4208(a) (2) and his reason for incorporating the provisions thereof in the judgment. Appellant not only did not object, but apparently approved the court's action.

Seemingly, appellant was advised after he was incarcerated in the Federal Prison at Leavenworth, Kansas, that § 4208(a) (2) does not apply to a conviction under § 2113(e). This prompted appellant to write a letter to the district court under date of September 24, 1965, in which he requested the Judge to "do what is right and lawful in this matter". Judge Hanson treated the letter as a motion pursuant to Rule 35 F.R.Crim.P., and on October 1, 1965, entered an order reciting: "It appearing that the time for reduction of sentence has expired, and the legality of the sentence not being in doubt, it is hereby ordered that the motion be and the same is denied". No appeal was taken from this order. Under these circumstances, it is clear that the question of the legality of the sentence is not properly before us. We are not disposed to review an order of the court from which no appeal was taken. However, we deem it appropriate to observe that Rule 35 provides that: "The court may correct an illegal sentence at any time". We are satisfied that the district court did not have the benefit of the views of counsel on the question of the legality of the sentence as those views have been presented to us.

We have not fully explored the merits of the question, and our expressions are not intended to give any support for or against the validity of the sentence. Our position is: (1) the question is not properly here; (2) the district court, in the first instance, should be afforded the opportunity to consider and pass upon the issue.

We are satisfied appellant received a fair trial, the prosecution of the offense has not been barred, there has been no deprivation of appellant's constitutional rights, and the judgment should be affirmed, without prejudice to appellant to challenge the legality of the sentence in the district court.

---

10. Section 4208(a) (2) provides that upon entering a judgment of conviction, the court having jurisdiction to impose sentence may fix the maximum sentence of imprisonment to be served in which event the court may specify that the prisoner may become eligible for parole at such time as the board of parole may determine.