[No. 39894.    En Banc.    October 1, 1970.]

THE STATE OF WASHINGTON, *Respondent*, v. SAMUEL
WILLIAMS, *Appellant*.*

*Norman W. Cohen*, for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *Edmund P. Allen*, for respondent.

*Arthur G. Barnett, Michael H. Rosen*, and *Christopher E. Young*, amici curiae.

ROSELLINI, J.—The appellant was charged by information with a violation of the Uniform Narcotic Drug Act, RCW 69.33, as follows:

> He, the said SAMUEL WILLIAMS, in the County of King, State of Washington, on or about the 26th day of March, 1967, willfully, unlawfully and feloniously did have in his possession and did sell to one Robert Smith, a minor, a certain narcotic drug, to-wit: cannabis sativa, otherwise known as marihuana, as interdicted by the Uniform Narcotic Drug Act; . . .

The jury found the appellant guilty on evidence that he had sold a marijuana cigarette to Robert Smith in response to the latter's request in a cafe in Seattle. Upon appeal, he has raised a number of questions, including the constitu-

---

*Reported in 475 P.2d 100.

tionality of the 40-year maximum sentence imposed upon him under RCW 69.33.410 (4).

■ While this case was pending, the legislature enacted Laws of 1969, Ex. Ses., ch. 256, § 11, p. 2392, providing that the Uniform Narcotic Drug Act should not ever apply to marijuana. We held in *State v. Zornes,* 78 Wn.2d 9, 475 P.2d 109 (1970), that the legislature intended this act to apply to all pending cases, and that any prosecution involving marijuana brought under the authority of RCW 69.33 should be dismissed.

Since the appellant was charged under an act which does not apply to his alleged offense, the prosecution cannot be sustained. It has been suggested that the court should interpret the legislative intent so as to make only the penalty provisions of the 1969 dangerous drug act apply to pending cases. We can find no language restricting in such manner the broad statement contained in RCW 69.33.220 that "narcotic drugs shall not include cannabis and the *provisions of this chapter shall not ever be applicable to any form of cannabis."* (Italics ours.) It is not the proper function of this court to revise the legislative intent, as that intent is expressed in the statutes.

Since none of the provisions of the Uniform Narcotic Drug Act apply to the appellant's alleged act, a prosecution under the act cannot stand. *State v. Zornes, supra.* We know of no authority for the proposition that a defendant can be tried under an act which the legislature has decreed does not apply to his offense and be sentenced according to the penalties of a different act under which he was neither charged, tried nor convicted. It becomes unnecessary to discuss the issues raised by his assignments of error.

The judgment is reversed and the action is dismissed.

HUNTER, C. J., FINLEY, HAMILTON, NEILL, and McGOVERN, JJ., concur.

HALE, J. (dissenting)—I dissent because the legislature, in removing cannabis sativa from the Uniform Narcotic Drug Act (RCW 69.33) and placing it under the dangerous drug act (RCW 69.40) did not, I think, intend to work a

general amnesty for users, possessors and pushers of marijuana under the statute of limitations. True, the enactment (Laws of 1969, Ex. Ses., ch. 256, p. 2383 (RCW 69.33-.220(13))), after defining narcotic drugs did contain a proviso "That narcotic drugs shall not include cannabis and the provisions of this chapter shall not ever be applicable to any form of cannabis," but this rather strange expression, in my opinion, amounts to little more than statutory surplusage, for one session of the legislature cannot impose its will upon or bar its successor sessions from legislating upon the same subjects. Unless expressly declared otherwise, amendment or even repeal of a penal statute does not abrogate prosecution of pending cases. RCW 10.01.040.

The legislature did not, I think, intend to bar the prosecution of pending marijuana cases under the statute of limitations and legislate their dismissal simply because, in the interval between the 1969 amendment and final appeal, more than 3 years had run from the commission of the acts charged. That oddly phrased proviso did, in my view, engender a strange result in *State v. Zornes*, 78 Wn.2d 9, 475, P.2d 109 (1970). In trying to give it a rational construction, a majority of the court thought it meant that, because Zornes had been convicted of a felony under the Uniform Narcotic Drug Act for mere possession of marijuana, an offense which the amendment reduced to a misdemeanor, the information had to be dismissed. Others of the court thought that case need not be dismissed but, because the offense of mere possession had become a misdemeanor, it should be remanded for a new trial on the same pending information. In essence, the court, as I understand *Zornes*, held that all marijuana cases, whether of possession, use, sale, or sale to minors, pending at the time the amendatory legislation became effective, would be treated as being brought under the dangerous drug act. Because of the language of the proviso and the admonition in Laws of 1970, Ex. Ses., ch. 80, p. 682, directing the Board of Prison Terms and Paroles to reexamine all marijuana convictions and be guided by the reduced penalties, a marijuana prosecution would be deemed a pending prosecution in those

cases in which the judgment and sentence had not become final, including marijuana convictions on appeal where the remittitur had not yet gone down. We did not pass upon other claimed errors in *Zornes,* hence the view of the concurrence to grant a new trial rather than a resentencing. Our main disagreement as to the result of the reversal was the direction in the majority opinion to dismiss the information rather than grant a new trial on the one pending.

The instant case, while similar to *Zornes,* has several distinguishing features. Defendant here was charged and found guilty by a jury of a *felony* under the Uniform Narcotic Drug Act which precise crime was subsequently made a *felony* under the dangerous drug act. The same offense—sale of marijuana to a minor as charged in the information—became punishable by a 20-year maximum under the dangerous drug act instead of a 40-year maximum under the Uniform Narcotic Drug Act. Since the court is dismissing the action, it has found it unnecessary to discuss the assignments of error. In my opinion, however, the information should not be dismissed but the judgment of conviction affirmed and the cause remanded for resentencing under the penalty section of the dangerous drug act. Accordingly, I think it appropriate to discuss the basic assignments of error.

The information charging a violation of the Uniform Narcotic Drug Act, RCW 69.33, declared as follows:

> He, the said SAMUEL WILLIAMS, in the County of King, State of Washington, on or about the 26th day of March, 1967, willfully, unlawfully and feloniously did have in his possession and did sell to one Robert Smith, a minor, a certain narcotic drug, to-wit: cannabis sativa, otherwise known as marihuana, as interdicted by the Uniform Narcotic Drug Act;   .   .   .

Returning a general verdict finding defendant guilty as charged, the jury also delivered a special verdict answering "Yes" to the question, "Did the defendant Samuel Williams know at the time of the sale that Robert Andrew Smith was a minor?" Defendant now appeals a judgment and mandatory sentence of not more than 40 years' imprison-

ment imposed under RCW 69.33.410(4) which fixed the punishment for sale of narcotics to minors at not less than 20 nor more than 40 years.

While this case was on appeal, the legislature, as earlier noted, removed marijuana from the classification of a narcotic drug and redefined it as a dangerous drug. Laws of 1969, Ex. Ses., ch. 256, p. 2383; RCW 69.33.220, 69.40.060. The offense was thus taken out of RCW 69.33.410 which fixed the maximum punishment at 40 years for any transaction involving the sale of marijuana to a minor, and placed under the dangerous drug penalty section which prescribes a maximum sentence of 20 years for that offense. RCW 69.40.070. Because of the curious language employed in Laws of 1969, Ex. Ses., ch. 256, § 11, p. 2392, stating that marijuana should not ever be regarded as a narcotic drug under the Uniform Narcotic Drug Act, a majority of the court held that the new provision should apply to all pending cases, that is, in cases where the judgment and sentence had not become final. *State v. Zornes, supra.* Aside from this statutory change, which I consider to be no more than a reduction in the punishment, however, the case, I think, should be reviewed as presented on appeal.

Defendant first challenges the sufficiency of the evidence. Andre Le Cornu and Robert Smith were friends. March 25, 1967, Le Cornu went to the White Sands Cafe in Seattle at about 10 p.m. Shortly thereafter, he telephoned Smith and, as he described it, "asked him to come down to the White Sands . . . [and] we would get loaded." Smith arrived there about 11:30 and the two sat in a booth near the front of the cafe drinking Cokes and listening to records. Le Cornu said that about 2 hours after Smith's arrival he saw Robert Smith go to the back of the cafe; he observed him talking there to defendant Williams. LeCornu said that he then walked toward Smith and "I asked him if he got this stuff and he said yes, and we went around the back and smoked it." He added, "Well, we started to smoke it, and we smoked about two inches of the marijuana cigarette and a police car came, and we ran. Bob was caught and I got away."

Testifying as to his knowledge of marijuana, Le Cornu said that he had smoked marijuana on six prior occasions and took about six puffs from the marijuana cigarette that night. He was shown the remnants of a partly consumed cigarette and testified that it resembled the one he had puffed on that night. Apparently Le Cornu was a minor, for the next day he was taken by the police to juvenile court.

Robert Smith testified that he was 16 years of age at the time of the transaction and corroborated Le Cornu's testimony in nearly every detail. He said that he received the telephone call from Le Cornu, went to the White Sands Cafe, talked with Le Cornu until about 1:30 a.m., and that he then approached the defendant, Samuel Williams, who was on one of the stools at the counter. As to the purchase of marijuana from defendant, Smith testified:

Q. Did you say anything to him? A. Yes. I asked him if he had any weed or marijuana. Q. And what did he say? A. He said yes. Q. And what happened after that? A. Well, I bought a cigarette from him. Q. Did you give him any money for it? A. Yes. Q. Do you recall how much? A. One dollar. Q. Do you recall where he handed you the cigarette from? A. I think it was his left pocket. Q. Do you recall what he was wearing? A. A gray sweater and red shirt. That is all I remember.

That Robert Smith was only 16 years old was not denied, challenged or disputed in any way, or even indirectly made the subject of any conflicting testimony.

Both boys testified that they went out to the alley behind the cafe to smoke the cigarette and while they were there smoking it a police squad car came toward them. Smith, who had taken three or four drags from the marijuana cigarette, threw it away and they both ran. Police officers caught Smith two blocks from the White Sands and he related to them the pertinent events of the evening. He also had smoked marijuana before and identified the cigarette as being a marijuana cigarette. When asked why he assumed the defendant would sell him marijuana, he said that about 2 weeks earlier the defendant had approached him in the White Sands and asked him if he wanted some.

Two police officers testified that at about 2:30 that morn-

ing they were riding in a police squad car through the alley in back of the White Sands Cafe and that two boys, apparently perceiving their headlights, suddenly ran from the alley. The police caught one of them who turned out to be Robert Smith. He told them he had bought a marijuana cigarette from the defendant and shortly thereafter identified his companion, Andre Le Cornu, as the person with him when they had spotted the police car. Within 20 minutes of apprehending Smith, the officers returned to the alley back of the White Sands and found a cigarette butt which, on subsequent chemical examination, proved to contain marijuana. After finding the marijuana butt, the officers took Robert Smith back to the White Sands where he pointed out the defendant, Samuel Williams, as the man from whom he had purchased it. The officers arrested defendant and removed from the pockets of a sweater he was wearing some scrapings which, on laboratory analysis, turned out to be marijuana.

Thus, there was ample evidence to support the general verdict of guilty as to the offense charged. As to the special verdict, that the defendant knew Robert Andrew Smith was a minor, there was the purchaser's unchallenged testimony that he was only 16 years old when he made the purchase; and, in addition, the jury had a chance to study his appearance, voice, demeanor and mannerisms. The evidence supported this verdict, too.

Defendant excepted to instruction No. 7A, which read:

> You are instructed that a sale of marijuana, if any, is knowingly made within the meaning of the statute prohibiting such sale, if the seller knew or in the exercise of reasonable prudence should have known that the purchaser on the date of such sale, if any, was in fact under 21 years of age.

He contends that the test under RCW 69.33.410(4) is not whether the defendant should have known but whether he actually did know that the purchaser was under the age of 21 years, because that subsection uses the term "knowingly involving a sale to or other transaction with a minor." Defendant says that, by reason of instruction No. 7A, he

was actually charged with a violation of one statute (RCW 69.33.230) and convicted of another (RCW 69.33.410(4)). This position, I think, is untenable for, even if the instruction (7A) was erroneous in any degree, such error became harmless when the instruction was read with all others given.

The Uniform Narcotic Drug Act, RCW 69.33, now provides very heavy penalties for illegal transactions with minors; that offense remains a felony in the dangerous drug act as amended, RCW 69.40. RCW 69.33.230 of the Uniform Narcotic Drug Act, at the time of the offense charged, made it unlawful for anyone to manufacture, possess, have under his control, or sell any narcotic drug, including marijuana, unless authorized to do so by the statutes. Sale, as defined in the statute, includes barter, exchange, gift or offer therefor. RCW 69.33.220(10). Under both statutes, it is a criminal offense for an unlicensed and unauthorized person to possess and sell marijuana to anyone, regardless of age. The age of the purchaser is not *an element of the crime* of unlawful sale, but becomes highly pertinent, however, if the sale has been to a minor, for then the *punishment* as set forth in both RCW 69.33.410(4) (Uniform Narcotic Drug Act) and RCW 69.40.070(4) (dangerous drug act) is much greater.

When it comes to transactions with minors, the last provision of the section (RCW 69.33.410(4); Laws of 1963, ch. 38, § 20, p. 374), vests no discretion in the trial judge other than deferment or suspension of sentence, as follows:

(4) For any offense under the provisions of this chapter knowingly involving a sale to or other transaction with a minor the offender shall be guilty of a felony and shall be fined not more than fifty thousand dollars and be imprisoned in the state penitentiary not less than twenty or more than forty years.

Similarly, RCW 69.40.070 of the dangerous drug act reads:

Whoever violates any provision of chapter 69.40 RCW, and said violation solely involves the drug cannabis, com-

monly known as marihuana, shall, upon conviction, be fined and imprisoned as herein provided:

. . .

(4) For any offense under the provisions of this chapter involving a sale to or other transaction with a minor the offender shall be guilty of a felony and shall be fined not more than fifty thousand dollars and be imprisoned in the state penitentiary not more than twenty years.

The crime, as denounced by the Uniform Narcotic Drug Act and defined in the court's instruction, consisted of the willful sale of marijuana to Robert Andrew Smith in King County—and it amounted to a crime regardless of Smith's age. There were no other or different elements to be proved under either statute.

Moreover, referring to Robert Smith in the information as a minor did not make his minority one of the elements of the crime. It did no more than particularly describe and identify him and gratuitously alerted the accused to the likelihood that proof of minority might be offered under the foregoing statute as the subject of a special verdict affecting punishment. Thus forewarning the accused, it did him more good than harm. The minority of the purchaser, not being an element of the offense charged but material only to punishment therefor, was not essential to the information. Stating it in the information, therefore, amounted to no more than harmless surplusage. *State v. Winger,* 41 Wn.2d 229, 248 P.2d 555 (1952).

As to instruction No. 7A, there was no dispute concerning the purchaser's minority and no claim that the defendant did not know he was a minor. Robert Smith testified that he was 16 years old at the time of the alleged purchase; the defendant, court and jury saw him and heard him speak, and no one sought to challenge or deny his statement concerning his age. Although the jury could have been told in lieu of instruction 7A that, in determining if the accused knew Smith was a minor, it could consider whether the accused in the exercise of reasonable prudence should have known it, the deficiencies in phrasing, I think, did no harm here and were cured by the other instructions relating to the buyer's minority.

· ·Also, though instruction No. 7A, I think, should not be deemed a model for future use, it did declare the principles expressed in *State v. McCormick,* 56 Wash. 469, 105 P. 1037 (1909), involving the sale of liquor to a minor—that anyone dealing illegally with a minor does so at his peril. In that case, we said, at page 474:

> In substance, the court said to the jury that the sale was made knowingly within the meaning of the statute, if the appellant's bartender knew or, in the exercise of reasonable prudence should have known, that Nagley was a minor at the date of the alleged sale. The word was correctly defined. *State v. Constatine,* 43 Wash. 102, 86 Pac. 384, 117 Am. St. 1043.

Again, in *Glucina v. Goss Brick Co.,* 63 Wash. 401, 115 P. 843 (1911), a civil action for injury to a child employee brought under a statute prohibiting child labor, this court cited both *State v. Constatine,* 43 Wash. 102, 86 P. 384 (1906), and *State v. McCormick, supra,* and said, at page 406:

> But the fact that the father misled the appellant is no defense as against the child. Even if the appearance of the child indicated that he was over the age of fourteen years, that fact would not relieve the defendant, because the statute makes no such exception.

But, as earlier suggested, any doubts as to the effect of instruction No. 7A are laid to rest, I think, by instruction No. 15, which put the question of the accused's knowledge of the purchaser's age directly to the jury, as follows:

> In the event you find that the defendant did sell a narcotic drug to one Robert Andrew Smith, you will then return a special verdict as follows:
>
> "Did the defendant know at the time of the sale that Robert Andrew Smith was a minor."
>
> This special verdict will be answered by you "Yes" or "No."

Accordingly, any error that might be said to exist in instruction No. 7A because of awkward phrasing or otherwise, was, in my opinion, harmless and did not disparage defendant's right to a fair trial.

Defendant next contends that the sentence was so great

as to amount to cruel and unusual punishment. This contention, I consider, would be made with the same vigor against a sentence of 20 years on remand as it was against the 40-year sentence imposed. Both the Uniform Narcotic Drug Act and the dangerous drug act, as amended, provide for drastically increased sentences for illegal transactions with minors. On the general verdict of guilty and the special verdict that the defendant knew the purchaser was a minor, the court, in accordance with RCW 69.33.410(4), sentenced the defendant "for a maximum term of not more than forty years." Under the penalty section of the amended dangerous drug act, the maximum sentence would be not more than 20 years. RCW 69.40.070(4). To state defendant's position most emphatically, he urged and I assume would contend that a sentence of either 40 years' or 20 years' imprisonment for the illegal sale of one marijuana cigarette to a minor amounts to a cruel and unusual punishment under the eighth amendment to the United States Constitution which declares that "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

This issue unavoidably touches that delicate point of balance among the executive, legislative and judicial powers relating to crime and punishment. Historically, the separation of powers has emerged as a salutary force directed to keeping each function of government within its proper sphere and designed to prevent the trespass of one branch upon another. Excessive actions amounting to a usurpation of the powers and duties of one branch of government over the powers and duties of another branch tends to aggrandize the one and destroy the other. There exists a constant hazard that serious and protracted breaches of the separation of powers may be inimical to, if not actually destructive of, our constitutional, representative democracy.

With rare exceptions, it has been the responsibility of the legislative branch of government to define crimes and prescribe the punishment, the judicial branch to ascertain guilt and fix the punishment within the limits prescribed, and the executive branch to carry out the judgment and sen-

tence. This power in the legislative branch to fix punishment is practically unlimited—controlled only by the constitution. 21 Am. Jur. 2d *Criminal Law* § 577 (1965).

Acknowledging the almost plenary powers of the legislative branch to define crime and prescribe punishment, and the subordination of the judiciary to the legislature in that sphere of law, the Supreme Court of the United States in *Weems v. United States,* 217 U.S. 349, 54 L. Ed. 793, 30 S. Ct. 544 (1910), said, at page 378:

> We concede the power in most of its exercises. We disclaim the right to assert a judgment against that of the legislature of the expediency of the laws or the right to oppose the judicial power to the legislative power to define crimes and fix their punishment, unless that power encounters in its exercise a constitutional prohibition. In such case not our discretion but our legal duty, strictly defined and imperative in its direction, is invoked. Then the legislative power is brought to the judgment of a power superior to it for the instant. And for the proper exercise of such power there must be a comprehension of all that the legislature did or could take into account, that is, a consideration of the mischief and the remedy. However, there is a certain subordination of the judiciary to the legislature. The function of the legislature is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety. They have no limitation, we repeat, but constitutional ones, and what those are the judiciary must judge.

Then in conveying the idea that it is the legislature and not the courts which assesses the needs of society, the court added, at page 379:

> We have expressed these elementary truths to avoid the misapprehension that we do not recognize to the fullest the wide range of power that the legislature possesses to adapt its penal laws to conditions as they may exist and punish the crimes of men according to their forms and frequency. We do not intend in this opinion to express anything that contravenes those propositions.

That the legislature acted deliberately and designedly in first setting the punishments for violations of the Uniform Narcotic Drug Act and later increasing them for transac-

tions affecting minors, may be seen from a history of the punishment sections. In 1951, it fixed the punishment for narcotic violations at a fine of not more than $50,000 and imprisonment for not less than 10 years, but gave the courts discretion for a first offense to impose a fine of not more than $1,000 and not more than 1 year in the county jail. Laws of 1951, 2d Ex. Ses., ch. 22, § 20, p. 93. In that statute, narcotic drug by definition included cannabis, or, as it is commonly known, marijuana. The next session of the legislature, however, enacted another comprehensive code concerning narcotics and this time markedly increased the penalties if the offense involved a sale to or other transaction with a minor—prescribing then a fine of not more than $50,000 and imprisonment of not less than 20 years, but it again gave the court discretion for a first offense involving a minor, to impose a lesser penalty. Laws of 1953, ch. 88, § 3, p. 162.

Then, in 1959, the legislature largely reenacted the statute concerning narcotic drugs, Laws of 1959, ch. 27, p. 197, providing the same penalty for transactions with minors as in the earlier statute but retaining in the court the same discretion to impose a lesser penalty for a first transaction involving a minor. Laws of 1959, ch. 27, § 69.33.410, p. 219. Subsequently, in 1963 (Laws of 1963, ch. 38, § 20, p. 374), the legislature in the statute under which this information was brought eliminated all discretionary leniency—except probation—for offenses involving transactions with a minor by categorically declaring that any offender knowingly involved in a sale to or other transaction with a minor shall be punished by not less than 20 nor more than 40 years' imprisonment. (See RCW 69.33.410(4).)

Thus, after four successive reenactments, the legislative branch of government fixed the maximum sentence at 40 years for narcotics violations involving transactions with minors. That provision remains in effect as to narcotic drugs, the only relevant change being that, with a redefining of marijuana as a dangerous drug instead of a narcotic, the maximum sentence for transactions with minors is 20 years. RCW 69.40.070.

. Once the court had decided that, because of the defendant's numerous misdemeanor convictions, the granting of probation on a deferred or suspended sentence was unwarranted, it had no alternative but to impose the sentence prescribed by the foregoing statute. The granting of probation and imposition of a deferred or suspended sentence lies exclusively within the discretionary powers of the sentencing court; if the court determines that probation is unwarranted, it has no discretion in the premises except to impose the statutory maximum. Since probation appeared unmerited, or unwise, and the court decided to impose sentence, it had no alternative under RCW 69.33.410(4) but to impose the maximum fixed by statute at 40 years.

That the legislature has, in the judges' opinions, provided too heavy a penalty for the offense, or that the sentence actually imposed is too great, does not give the appellate court on review power to revise the sentence. *Ex parte Watkins,* 32 U.S. (7 Peters) 568, 8 L. Ed. 786 (1833).

It is axiomatic that an act of the legislature is presumed to be constitutional. If the constitutionality of a statute is said to depend upon the existence of certain facts and circumstances, then the existence of those facts and circumstances will be presumed for the purpose of giving validity to the statute. 16 C.J.S. *Constitutional Law* § 100 (b) (1956). Or, if such facts may reasonably be conceived to exist, even though the judge may doubt their existence, they will be presumed to exist. *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998 (1936); *State ex rel. Mason County Logging Co. v. Wiley,* 177 Wash. 65, 31 P.2d 539 (1934); *Overlake Homes, Inc. v. Seattle-First Nat'l Bank,* 57 Wn.2d 881, 360 P.2d 570 (1961).

The legislature was well within its powers in assuming that the possession and sale of marijuana is a serious social evil and a menace to the health, welfare and morals of society, and in assuming, too, that these dangers were compounded and the menace aggravated when the crime involved a traffic with children and minors, and it acted within its constitutional powers in establishing severe penalties on the basis of both assumptions. If there is any

conceivable relationship between the punishment imposed and the conduct sought to be interdicted by it, the courts must respect the legislative opinion on the subject and cannot declare the punishment unconstitutional as cruel or unusual. To hold otherwise would in a large measure tend to deprive a democratic society of one of the elements of self-government, and substitute the personal views of the judges for the constitution. Thus, although it is possible to conceive of a situation in which a long-term imprisonment may be so disproportionate to the offense as to amount to a cruel punishment, this is not such a case. *See Coon v. United States,* 360 F.2d 550 (8th Cir. 1966), *cert. denied,* 385 U.S. 873, 17 L. Ed. 2d 100, 87 S. Ct. 145 (1966). Accordingly, although many thoughtful persons may believe the intentional and calculated sale of marijuana to a 16-year-old boy does not amount to a serious dereliction, we, as a court of review, cannot treat it as beyond legislative competence to classify it as a very serious matter.

Finally, the fact that the punishment is severe and provides for a long-term imprisonment does not of itself make it cruel or unusual. *Ginsberg v. United States,* 96 F.2d 433 (5th Cir. 1938). We passed on the very point now under discussion recently in *State v. Robinson,* 75 Wn.2d 230, 450 P.2d 180 (1969), holding that we found no apparent unconstitutionality in the penalty section of the Uniform Narcotic Drug Act.

Nor does an appellate court have power on review to revise a sentence on review when in its opinion the sentence imposed was too severe for the crime committed, if the sentence was within the limits prescribed by statute. *Ex parte Watkins,* 32 U.S. (7 Peters) 568, 8 L. Ed. 786 (1833).

As long as the conduct sought to be interdicted may reasonably be regarded as bad, dangerous, antisocial or inimical to the public welfare and is not otherwise protected by the constitutions, it may be prohibited or defined as a crime and the legislature has nigh plenary powers in prescribing the length of imprisonment for it. Some persons

may, for example, view draft evasion as a minor offense in times of peace; others view it as a serious dereliction. Yet, despite such philosophically differing points of view, draft evasion has been defined by Congress as a heinous offense whether in peace or war and constitutionally punishable by a long term of imprisonment. *Kennedy v. Mendoza-Martinez,* 372 U.S. 144, 9 L. Ed. 2d 644, 83 S. Ct. 554 (1963).

Legislative wisdom is not subject to judicial review. It is not for the courts to decide whether the legislature acted wisely or unwisely but rather within its constitutional powers in prescribing so severe a penalty for sale of marijuana to children. Accordingly, although the maximum punishment of 40 years for illegal sale of marijuana to a minor is severe, it is not unconstitutional. The same idea, I think, applies equally to the maximum sentence of 20 years.

As to the sentence imposed, the court had before it a report concerning the defendant showing 19 convictions for misdemeanors, three of which had been reduced from felony charges. The report additionally showed several bail forfeitures for misdemeanors. Whether to place the defendant on probation and give him a deferred sentence, or grant probation and impose a suspended sentence, or impose a sentence of 40 years' imprisonment, were decisions entirely within the sentencing judge's discretion. Having in the exercise of that discretion determined that probation was unwarranted and would likely be a failure, the court, under RCW 9.95.010, was required to impose the maximum sentence prescribed by statute. The sentence actually to be served by the defendant is not 40 years, of course, but such time as may be prescribed by the Board of Prison Terms and Paroles.

I would, therefore, hold that neither RCW 69.33.410(4), prescribing a maximum sentence of 40 years' imprisonment for illegal narcotic transactions with a minor, nor RCW 69.40.070(4), fixing a maximum of 20 years for illegal cannabis transactions with a minor, impose cruel and unusual punishments under the constitutions. Although those sections in allowing maximum sentences of 40 and 20 years respectively for transactions with minors may appear un-

duly severe, we cannot say that they are constitutionally unwarranted considering the evils they are intended to curtail.

Defendant has concurrently brought before us a petition for a writ of habeas corpus. It presents no issues not included in this appeal and should be denied.

The cause, in my opinion, should, therefore, be remanded to the superior court for vacation of the 40 years' maximum sentence and for a resentencing under the provision of the dangerous drug act (RCW 69.40.070), which prescribes a maximum of 20 years' imprisonment for a marijuana sale to or transaction involving a minor.