**Michael CATLETT, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3213.**

Supreme Court of Alaska.

Oct. 27, 1978.

Peter F. Mysing, Richard G. Lindsley, Asst. Public Defenders, Brian Shortell, Public Defender, Anchorage, for appellant.

John Scukanec, Asst. Dist. Atty., Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BOOCHEVER, Chief Justice, RABINOWITZ, CONNOR, BURKE and MATTHEWS, Justices.

## OPINION

MATTHEWS, Justice.

Michael Catlett was charged in a two count indictment for the offenses of (1) grand larceny [1] and (2) removal of aircraft

---

1. AS 11.20.140, since amended, at the time of the incident, provided, in part:

    *Larceny of money or property.* A person who steals money, goods, or chattels, . . . is guilty of larceny. Upon conviction, if the property stolen exceeds $100 in value, a person guilty of larceny is punishable by imprisonment in the penitentiary for not less than one nor more than 10 years. If the property stolen does not exceed $100 in value, the person, upon conviction, is punishable by imprisonment in a jail for not less than one

parts.[2] Both counts of the indictment arose out of the same incident at the Lake Hood airport facility in Anchorage. There, the state claims, Catlett removed and sought to permanently carry away the landing skis from a Piper P–18 in the early morning hours of April 5, 1975.

Prior to trial, defense counsel moved the superior court to require the state to elect the count under which it would prosecute the case. Alternatively, defense counsel asked the court to sever the two offenses for trial. The court denied defendant's motion for election on the grounds that the two crimes required proof of different elements to secure a conviction on each. The court also denied defendant's motion for severance because there was no showing of actual prejudice.

Defendant filed a pre-trial motion for discovery of, *inter alia,* all pictures taken by airport security police and other law enforcement officers. The court entered an oral order to this effect. When defense counsel did not receive any of the photographs requested, the court ordered that all testimony based entirely on the photographs be excluded but that the law enforcement officers could testify from their personal observations. After the completion of voir dire, however, the state indicated that the seven photographs of the scene had been uncovered by the airport security police. The court allowed defense counsel a three day continuance to examine the newly produced evidence and ruled that testimony based on the photographs would be admissible.

At trial, the state sought to prove that on April 5, 1975, Catlett entered the Lake Hood airport facility from the north gate entrance off the western extension of Northern Lights Boulevard. Catlett then proceeded south to the aircraft where he removed the skis from the plane and began dragging them through the snow back toward the north gate entrance. He abandoned the skis in the snow and fled when he was startled by airport security guard Jeff Sheffield, who had begun investigating the disturbance in the area. Catlett was later apprehended by Sheffield near the fence along the northern boundary of the airport where Sheffield found several incriminating items in Catlett's pockets, including a pair of side cutters, a screw driver, a pair of channel locks and a nut and some washers. A bag containing other tools and another set of washers from the airplane skis was found near Catlett.

Although the defense did not contest the fact that Catlett was in the Lake Hood airport compound early that morning, it did offer an alternate story. Catlett had been drinking at the Dimond Lounge late that night and had accepted a ride home from an acquaintance who would only be able to take him to the International terminal. Since Catlett lived on the other side of Lake Hood, he began walking home from the International terminal across the Lake Hood airport compound. When Catlett came to the north end of the compound, he encountered the airplane skis, already removed from the airplane, and abandoned in the snow. Catlett found a bag of tools nearby, placed several of the tools in his pockets, and carried the rest with him in the bag as he proceeded toward the north gate on his way home. Upon observing from a distance that the north gate was closed, Catlett left the road and walked to the fence along the eastern boundary of the fence looking for an exit. While searching for a way out, Catlett was apprehended by Officer Sheffield.

When officers from the airport security police testified about their investigation of the incident at trial, it was discovered that two or three photographs taken of the location where the skis were found had been

month nor more than one year, or by a fine of not less than $25 nor more than $100.

**2.** AS 11.20.525(a) provides:
  *Stealing, removing or damaging parts of an aircraft.* (a) A person who wilfully or maliciously steals, removes, damages or in any other manner interferes with any part of an aircraft without the consent of owner shall be punished, upon conviction, by imprisonment for not more than 10 years, or by a fine of not more than $10,000, or by both.

destroyed by chief investigating officer Sheffield. Sheffield testified that the Polaroid photographs had turned out completely blank and he had therefore destroyed them.[3]

After trial was concluded, the jury returned verdicts of guilty on both counts of the indictment. The court combined both counts for the purposes of sentencing and sentenced Catlett to three years, with 21 months suspended.

On appeal, Catlett raises three issues: 1. Did the trial judge abuse his discretion in denying defense counsel's motion for election or severance? 2. Did the destruction of photographs by investigating officers violate defendant's (a) right to confrontation, (b) right to cross examination, or (c) due process of law? 3. Did the entry of conviction for grand larceny and removal of aircraft parts constitute double jeopardy?

## SEVERANCE AND ELECTION

Catlett's first argument is that the superior court erred in not severing the charges or ordering the state to elect one charge under which to proceed. Criminal Rule 8(a) provides for the consolidation of two or more offenses in the same indictment if the offenses charged "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." If, however, it appears that the defendant is "prejudiced by a joinder of offenses . . in an indictment . . . the court may order an election or separate trials of counts . . . ." Criminal Rule 14.

▓▓ Once the trial court has made a decision based on Criminal Rule 14, that decision may be overturned only where the court has abused its discretion and where prejudice to the defendant has been shown. *Stevens v. State,* 582 P.2d 621, 628 (Alaska

1978); *Richards v. State,* 451 P.2d 359, 361–62 (Alaska 1969). We find that the court did not abuse its discretion in denying defendant's requests. The case involved two criminal charges arising out of the same incident. It was obvious to the trial court that much of the evidence adduced in seeking a prosecution under one count would be relevant to the other count. The public interest of avoiding duplicative trials can reasonably have been thought to outweigh the possible prejudice which might inhere in a combined trial.

## RIGHT TO CONFRONTATION AND DUE PROCESS

Catlett's second issue on appeal concerns the destruction of certain photographs by an airport security officer. There was considerable testimony at trial regarding the number, kind and direction of footprints in the snow in the area around the scene of the crime. Officers Sheffield and Coleman testified that immediately after Catlett's arrest two or three photographs were taken of the location where Catlett abandoned the skis. The pictures were taken from a northerly location and supposedly depicted the skis near the side of the road where they had been abandoned. The pictures, according to Chief Investigating Officer Sheffield came out "blank" and were therefore destroyed by Sheffield. It was Officer Coleman's testimony that the pictures turned out a "little fuzzy" and that after he submitted them with his report to the shift supervisor he never saw them again. It is defendant's contention that had these pictures not been destroyed (assuming they were not blank) they would have provided evidence corroborating his story, *i. e.,* the pictures would have shown two distinct sets of footprints in the snow (those of defendant and the real thief). Catlett contends that the destruction of those pictures violated his constitutional rights to confrontation and cross examination.

---

**3.** Officer Coleman, who took the pictures, testified that the photographs had turned out a "little fuzzy" but that he never saw them again after he had submitted them with his report to the shift supervisor.

Although the rights to confrontation and cross examination[4] traditionally arise in response to witness testimony, *California v. Green,* 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), they also apply to other evidence. In *Lauderdale v. State,* 548 P.2d 376, 381 (Alaska 1976), the defendant invoked his right to "confront" the ampul from a breathalyzer test which the prosecution sought to introduce against him. We found that defendant's quest was "closely analagous, if not equivalent, to the case where defense counsel, by cross examination, tests the credibility of a witness who testifies against an accused." There are distinguishable differences between *Lauderdale* and the case at bar. In *Lauderdale,* the prosecution sought to introduce the results of the breathalyzer test against the defendant. Moreover, under AS 28.35.033(3), a finding of .10% or greater blood alcohol creates a *presumption* that the person tested was under the influence of alcohol. In the case at bar, the pictures were not introduced into evidence nor were they utilized at trial nor did officers Sheffield or Coleman prepare their testimony from these pictures. Thus, the foundation for the confrontation and cross examination rights, *i. e.,* the utilization or introduction of evidence or the taking of testimony based on that evidence, was not present. Hence, Catlett's confrontation argument is without merit.

Catlett alternatively argues that due process was violated by the destruction of the photographs. In *Torres v. State,* 519 P.2d 788, 795 (Alaska 1974), we quoted with approval the standard of review enunciated in *United States v. Bryant,* 142 U.S.App. D.C. 132, 439 F.2d 642 (1971), of claims of due process infringement when the court is unable to discern whether the disputed evidence would have been favorable to the accused.

[T]he due process requirement applies to all evidence which "might have led the jury to entertain a reasonable doubt about [defendant's] guilt" and . . . this test is to be applied generously to the accused where there is "substantial room for doubt" as to what effect disclosure might have had.

*Id.,* 142 U.S.App.D.C. at 138, 439 F.2d at 648 (footnotes omitted). In reviewing the testimony at trial, we have assumed the destroyed photographs were developed as clearly as possible under the conditions in which they were taken. Our independent examination of the record reveals that the preservation and introduction of clear Polaroid photographs of the scene of abandonment would not have led the jury to entertain a reasonable doubt about Catlett's guilt.

Catlett's contention is that the pictures would have shown two distinct patterns of footprints in the snow. Officer Sheffield testified that there "seemed to be a lot of footprints" at the point where the skis were abandoned and that it was his initial impression that there might have been two people involved in the theft. His explicit testimony and speculation apparently did not raise a reasonable doubt in the minds of the jurors. We are not persuaded that pictures of the scene depicting many footprints would have added to Sheffield's testimony.

The uncontradicted testimony regarding the footprints in the snow and the evidence found on Catlett would have prevented a reasonable juror from entertaining a reasonable doubt as to his involvement in this crime even if pictures of the scene had been introduced. Officer Sheffield testified that he drove the route from the International terminal which Catlett claimed he walked and observed no footprints in the snow along this path until he reached the vicinity of the aircraft. Sheffield testified that after he was alerted to the fact that someone was in the Lake Hood compound, he re-

---

4. The sixth amendment to the United States Constitution provides, in part:

In all criminal proceedings, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ..

Article I, Section 11 of the Alaska Constitution provides, in part:

The accused is entitled to . . . be confronted with the witnesses against him . . . ..

traced the single set of footprints from the aircraft to their origin—the north gate. From there he followed the footprints onto the compound, south to the aircraft, then north to the point where the skis were dragged and abandoned and then further north and east to where he located Catlett up against the compound's cyclone fence. After Catlett was in custody, Sheffield matched Catlett's boot with an imprint that was made underneath the airplane. The original impression and writing on the sole of the bootprint underneath the plan were not disturbed when Sheffield placed the boot back into the print for comparison. The bootprint at the point where the skis were abandoned also conformed to Catlett's boot. Officer Coleman testified that although there were numerous footprints beneath the airplane, there was only one pattern.

When Catlett was arrested, a search of his pockets revealed a set of pliers with specks of "Sacramento green" paint embedded into its jaws, matching paint from bolts on the plane's landing gear which one would have to loosen to remove the skis. The owner of the plane testified that Sacramento green paint was unique to aircraft and was only sold by aircraft paint dealers. A further search of Catlett revealed a nut and two washers in his left front pants pocket which also had paint specks on them matching the Sacramento green color of the plane. The nut and washers had to be removed to disconnect the bungee cord attached to the skis.[5]

5. Although in this case the destruction of the photographs did not amount to a due process infringement, the preservation of photographs and other real evidence is of special importance to defense preparation. Evidence in question should not be destroyed based on an investigating officer's evaluation of its usefulness. We believe that this due process right is so important that airport security police and other state investigative agencies should have standard procedures for the preservation of evidence obtained in the course of an investigation. *See White v. State,* 577 P.2d 1056, 1059 (Alaska 1978); *Torres v. State, supra* at 797.

6. Article I, Section 9 of the Alaska Constitution states, in part:
No person shall be put in jeopardy twice for the same offense.

## DOUBLE JEOPARDY

Catlett's final argument on appeal requires us to determine whether the two convictions amounted to double jeopardy.[6]

■ We need not pause to consider whether the federal and state double jeopardy clauses ever prohibit multiple convictions where but a single sentence is given,[7] because here the two crimes involved are sufficiently separate to support two sentences. Both the conduct punished, and the societal interests protected by the two statutes are different.[8] To secure a conviction for grand larceny, the state must show, *inter alia,* that the property value was at least $250.00 [9] and that the object was taken and carried away with the intent to deprive the owner thereof permanently. These are not elements of a violation of AS 11.20.525(a). To secure a conviction under AS 11.20.525(a), the state must show, *inter alia,* that the part was attached and subsequently physically removed from the aircraft by the defendant, which is not an element of larceny. There is no requirement of intentional permanent deprivation; nor is there any requirement that the part exceed a particular monetary value. The statute prohibiting grand larceny is primarily aimed at the protection of property rights. AS 11.20.525(a) is primarily aimed at protecting individuals from bodily injury or death. Thus, the offenses are not the same.

AFFIRMED.

The fifth amendment to the United States Constitution states, in part:
No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . .
The fifth amendment was made enforceable against the states through the fourteenth amendment in *Benton v. Maryland,* 395 U.S. 784, 89 .S.Ct. 2056, 23 L.Ed.2d 707 (1969).

7. *See United States v. Golay,* 560 F.2d 866 (8th Cir. 1977).

8. *Mead v. State,* 489 P.2d 738 (Alaska 1971); *Whitton v. State,* 479 P.2d 302 (Alaska 1970).

9. At the time of the offense, AS 11.20.140 required that the object only exceed $100.00 in value.