Oliver BELL, Appellant,

v.

STATE of Alaska, Appellee.

No. 3612.

Supreme Court of Alaska.

July 27, 1979.

David C. Backstrom, Deputy Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

W. H. Hawley, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, CONNOR, BOOCHEVER and MATTHEWS, Justices, and DIMOND, Senior Justice.

BOOCHEVER, Justice.

On February 13, 1977, Oliver Bell was arrested after he was found driving a vehicle reported missing by its owner. Bell did not have the consent of the owner to drive the vehicle. On February 23, 1977, the grand jury returned an indictment charging Bell with felony joyriding, in violation of AS 28.35.010. The felony indictment was based upon the language of AS 28.35.010(a) which permits the offender to be charged

with a felony "[u]pon a conviction for a second or subsequent offense." Bell had been convicted of misdemeanor joyriding on two prior occasions, and of felony joyriding on one prior occasion.[1] In the trial court, Bell moved to dismiss the indictment on the ground that AS 28.35.010 violated his right to equal protection of the law guaranteed by the fourteenth amendment to the United States Constitution and article I, section 1, of the Alaska Constitution. The motion was denied by the superior court. Bell entered a plea of nolo contendere to the charge, preserving the equal protection issue for appeal.[2] Bell was found guilty of felony joyriding and was sentenced to three years imprisonment, the maximum allowed by law. On appeal, Bell contends that AS 28.35.010(a) violates the equal protection clause and challenges his sentence as excessive.

## I. EQUAL PROTECTION

Bell was convicted of felony joyriding, in violation of AS 28.35.010(a), which provides in part:

> *Driving a vehicle without owner's consent.* (a) A person who drives, tows away, or takes a vehicle not his own without the consent of the owner, with intent temporarily to deprive the owner of possession of the vehicle, . . . is guilty of a misdemeanor, and upon conviction is punishable by imprisonment for not less that 30 days nor more than one year, and by a fine of not less than $100 nor more than $1,000. *Upon a conviction for a second or subsequent offense, the offender may be charged with a felony, and if so charged and convicted, is punishable by imprisonment for not more*

---

1. The indictment cited only two prior joyriding convictions, and the colloquy at the sentence hearing reveals that the attorneys and the judge were confused about how many times Bell was previously convicted of joyriding. Judge Hodges eventually concluded: "I find that at—this is your fourth joyriding conviction, and your second felony joyriding conviction." This conclusion is confirmed by the presentence report.

2. The issue was preserved in accordance with the procedure prescribed in *Cooksey v. State*, 524 P.2d 1251, 1255–57 (Alaska 1974). The stricter standards announced in *Oveson v. Municipality of Anchorage*, 574 P.2d 801, 803 n.4 (Alaska 1978), do not apply to this case because Bell entered his plea prior to the decision in *Oveson*.

*than three years, or by a fine of not more than $5,000.* [emphasis added][3]

Bell argues that the statute is unconstitutional on its face[4] because it grants the prosecutor unlimited discretion to charge a felony or misdemeanor based upon the same criminal conduct, thereby denying equal protection of the law under the state and federal constitutions.[5]

Bell's equal protection challenge to the statute rests upon cases decided in other jurisdictions. The leading case is *State v. Pirkey*, 203 Or. 697, 281 P.2d 698 (1955) (en banc). An Oregon statute[6] making it a crime to draw a check with insufficient funds allowed the grand jury or magistrate the discretion to charge either a felony or a misdemeanor. Acting under the statute, the grand jury indicted the defendant for a felony. The accused challenged the statute on equal protection grounds, and the trial court dismissed the indictment. The Supreme Court of Oregon affirmed:

> The statute in question here defines and prohibits a specific act and provides

punishment therefor, but there is no semblance of a classification which would enable one to ascertain under what circumstances he may be guilty of a felonious crime, or under what *circumstances* [emphasis in original] he may be guilty only of a misdemeanor. So far as the statute is concerned, the same identical act, under the same circumstances, may constitute a felonious crime when committed by one person, and a misdemeanor when committed by another. It might be said that this statute classifies punishments, but does not classify the circumstances to which the diverse punishments are to be applied. This is not legal classification. It is legal chaos. The Oregon Constitution provides that "all penalties shall be proportioned to the offense. * * *" Oregon Constitution, Article I, Section 16. In the case at bar the offense, that is to say, the specific act which is prohibited, is clearly defined, but it is difficult to see how two separate and distinct punish-

---

**3.** The wording of this particular part of the statute is not a model of clarity. Bell assumes that a defendant charged with a *second* joyriding offense may be prosecuted as a felon. The state, on the other hand, believes that a felony may be charged only against third time and subsequent offenders. The language of the statute would seem to make a second or subsequent *conviction* of misdemeanor joyriding a condition precedent to charging an offender with felony joyriding, thus supporting the state's interpretation. We need not reach this issue, however, as Bell has been three times convicted of joyriding. For purposes of discussion in this opinion, it will be assumed that the state's interpretation is correct.

**4.** Bell does not contend that he has been discriminated against in the *application* of the statute.

**5.** U.S.Const. amend. XIV; Alaska Const. art. I, § 1. Although Bell challenges the joyriding statute on equal protection grounds, due process may also be violated by statutory schemes which give prosecutors excessive discretion to punish the same conduct unequally. As the court in *Palmore v. United States*, 290 A.2d 573, 584 n.28 (D.C.App.1972), *affirmed on other grounds*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973), stated:

> From the standpoint of constitutional theory, unequal punishment for the identical conduct may be considered as violative of *due*

*process* (unconstitutional vagueness with regard to the applicable penalty for specified conduct) as well as equal protection (unconstitutional lack of reasonable classification with regard to penalties for offenders guilty of the identical conduct). [emphasis in original]

Since Bell frames his arguments in terms of equal protection, we concentrate on equal protection analysis. The result under a due process analysis would probably be the same. *See State v. Modica*, 567 P.2d 420, 422 (Haw.1977).

**6.** The statute provided that a person who, with intent to defraud, writes a check backed by insufficient funds

> shall be guilty of a crime and may be proceeded against either as for a misdemeanor or as for a felony, in the discretion of the grand jury or the magistrate to whom complaint is made, or before whom the action is tried, as the case may be; and upon conviction thereof; if proceeded against as for or convicted of a misdemeanor, shall be punished by imprisonment in the county jail for not more than one year, or by a fine of not to exceed one thousand dollars ($1,000), or by both such fine and imprisonment, or, if proceeded against as for and convicted of a felony, shall be punished by imprisonment in the penitentiary for not more than five years.

281 P.2d at 699–700.

ments can both be proportionate to the same identical offense when the sentencing court is given no discretionary power to choose between them.

. . . It would be monstrous to uphold and enforce a statute which authorized a grand jury or magistrate to determine finally whether an accused should receive a fine or a jail sentence, on the one hand, or a penitentiary sentence, on the other, and to make that decision before trial, without having heard any evidence for the defendant, either on the issue of guilt or of mitigation, and on the sole basis of a prima facie case made against one still presumed to be innocent. . . . In our opinion, such a statute so construed would not only violate the Equal Protection Clause and constitute an unauthorized delegation of discretionary power, but it would constitute an invalid encroachment upon the function of the courts whose prerogative and duty it is to determine, not only guilt, but punishment, upon judicial inquiry, after public trial and within the maximum and minimum limits prescribed by the legislature.

*Id.* at 702–03.[7]

*Pirkey* relied in part upon Oregon's constitutional provision providing that all penalties be proportioned to the offense.[8] The Alaska Constitution contains no such provision. Other states, however, have followed the rule announced in *Pirkey* when their constitutions contained no provision similar to the Oregon Constitution.

For instance, in *Olsen v. Delmore*, 48 Wash.2d 545, 295 P.2d 324 (1956) (en banc), the defendant was charged with violation of a state statute prohibiting a person from carrying a pistol in a vehicle without a license. A separate penalty statute provided:

A violation of any preceding provisions of this chapter is punishable by a fine of not more than five hundred dollars or imprisonment in the county jail for not more than one year or both, *or* by imprisonment in the penitentiary for not less than one year nor more than ten years.

295 P.2d at 325 (emphasis in original). The defendant challenged his felony conviction upon equal protection grounds. After finding that the penalty statute authorized prosecuting officials to charge violations of the substantive statute as either a gross misdemeanor or a felony, the court, relying on *Pirkey*, held the statute unconstitutional:

A statute which prescribes different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situations is violative of the equal protection clause of the Fourteenth Amendment of the United States Constitution.

*Id.* at 327 (citation omitted).

The principle announced in *Pirkey* and *Olsen* has been reaffirmed by the Oregon[9] and Washington[10] courts, and has been followed by courts in other jurisdictions.[11] While most state courts that have dealt

---

**7.** To be distinguished from the *Pirkey* decision are cases involving criminal statutes that allow judges to impose punishment in either the misdemeanor or felony range but specify that a person convicted of the particular crime "shall be guilty of a felony." A statute fitting into this category, which punished contribution to the delinquency of a minor, was unsuccessfully challenged in *United States v. Meyers*, 143 F.Supp. 1, 16 Alaska 368 (D.Alaska 1956). The court held that no discretion was vested in prosecuting officials because the statute "makes the crime a felony in every instance regardless of the penalty imposed." *Id.* 143 F.Supp., at 5, 16 Alaska at 376.

**8.** For a list of states having such constitutional provisions, see *Green v. State*, 390 P.2d 433, 435 n.11 (Alaska 1964).

**9.** *State v. Cory*, 204 Or. 235, 282 P.2d 1054, 1056 (1955) (en banc).

**10.** *State v. Zornes*, 78 Wash.2d 459, 475 P.2d 109, 117–20 (1970) (en banc).

**11.** *See, e.g., Palmore v. United States*, 290 A.2d 573, 585 (D.C.App.1972), *affirmed on other grounds*, 411 U.S. 389, 93 S.Ct. 1670, 36 L.Ed.2d 342 (1973); *People v. Calvaresi*, 188 Colo. 277, 534 P.2d 316, 318 (1975); *State v. Modica*, 567 P.2d 420 (Haw.1977); *Spillers v. State*, 84 Nev. 23, 436 P.2d 18, 23 (1968); *State v. Chavez*, 77 N.M. 79, 419 P.2d 456, 458 (1966); *State v. Twitchell*, 8 Utah 2d 314, 333 P.2d 1075, 1077 (1959), *cf. People v. Eboli,*, 34 N.Y.2d 281, 357 N.Y.S.2d 435, 313 N.E.2d 746 (1974) (identically worded felony and misde-

with equal protection challenges to duplicative statutes have adopted the *Pirkey/Olsen* rationale, we note that some courts have apparently rejected it.[12] The Supreme Court of the United States has not addressed the constitutionality of duplicative statutes allowing different punishments for the same criminal conduct.[13]

Alaska has never squarely adopted the principle declared in *Pirkey* and *Olsen*.[14] We find it unnecessary to decide the issue in this case, for assuming arguendo that the doctrine is the law of Alaska, we hold that AS 28.35.010(a) does not fall within the rule.

Under the *Pirkey/Olsen* rule, equal protection is violated when a statute prescribes different punishments for the same act committed under the same circumstances by persons in like situations.[15] The meaning of this principle is clarified by *State v. Modica*, 567 P.2d 420 (Haw.1977):

meanor coercion statutes do not violate equal protection because in practice, and possibly by statutory construction, prosecutor has to prove an additional element for a felony charge); *State v. Hagge,* 224 N.W.2d 560, 565 (N.D. 1974) (implied repeal of manslaughter statute avoids prosecutor having unbridled discretion to charge negligent homicide or manslaughter). *See generally* Ceriani, *Prosecutorial Discretion in the Duplicative Statutes Setting,* 42 U.Colo. L.Rev. 455 (1971).

**12.** *See People v. McCollough,* 57 Ill.2d 440, 313 N.E.2d 462, 464 (over strong dissent by three justices), *appeal dismissed sub nom., McCollough v. Illinois,* 419 U.S. 1043, 95 S.Ct. 614, 42 L.Ed.2d 637 (1974).

**13.** In *Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), the Supreme Court refused to reach the defendant's equal protection challenge to two federal tax statutes which punished the same conduct. Although the Court found that the facts necessary to prove the defendant's violation of either statute were "identical," *id.* at 134, 76 S.Ct. at 688, 100 L.Ed. at 1018, the taxpayer had only raised the issue of whether the trial court should have given a lesser-included instruction, which would permit the jury to choose which statute the defendant had violated; the Court limited the grant of certiorari to that issue. *Id.* at 133, 76 S.Ct. at 687, 100 L.Ed. at 1017. The majority found no error in failing to give the instruction because

the factual issues to be submitted to the jury [would have been] the same; the instruction requested by the petitioner would not have added any other such issue for the jury's determination. . . . Whatever other questions might have been raised as to the validity of petitioner's conviction and sentence, because of the assumed overlapping of [the two statutes], were questions of law for the court. No such questions are presented here.

*Id.* at 135, 76 S.Ct. at 688, 100 L.Ed. at 1017 (footnote omitted). The majority opinion drew a sharp dissent from Justice Black, joined by Justice Douglas. They would have reached the issue and rejected the government's argument

that the statutes allowed the prosecution to elect between a felony or misdemeanor charge.

The Government's contention here also challenges our concept that all people must be treated alike under the law. This principle means that no different or higher punishment should be imposed upon one than upon another if the offense and the circumstances are the same. It is true that there may be differences due to different appraisals given the circumstances of different cases by different judges and juries. But in these cases the discretion in regard to conviction and punishment for crime is exercised by the judge and jury in their constitutional capacities in the administration of justice.

*Id.* at 140, 76 S.Ct. at 691, 100 L.Ed. at 1021. The Supreme Court has granted certiorari in a case that may shed some light on the validity of duplicative statutes under the federal constitution. *United States v. Batchelder,* 581 F.2d 626 (7th Cir. 1978), *cert. granted,* 439 U.S. 1066, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979). In *Batchelder,* two federal firearms statutes penalized the same conduct and the Seventh Circuit ordered the defendant resentenced under the statute with the lower maximum term. The Seventh Circuit based its decision on construction of the statutes, 581 F.2d at 629–31, but expressed serious doubts about the constitutionality of two statutes with different penalties for identical conduct. *Id.* at 631–34.

**14.** In *Green v. State,* 390 P.2d 433, 435 n.14 (Alaska 1964), we cited *Pirkey,* but only to note that the equal protection principle announced therein was inapplicable to the statute challenged by the defendant.

In *State v. Erickson,* 574 P.2d 1 (Alaska 1978), we commented upon the *Pirkey* rule by way of dicta. Although we noted that "serious equal protection questions" would arise "where the same conduct can be penalized with varying degrees of severity," *id.* at 18 n.112, nothing in *Erickson* can be construed as holding that the *Pirkey* rule prevails in Alaska.

**15.** *E.g., People v. Calvaresi,* 188 Colo. 277, 534 P.2d 316, 318 (1974)(en banc).

A denial of [constitutional] rights would be the result only if a violation of the misdemeanor statute would invariably and necessarily constitute a violation of the felony provision. Thus, where the same act committed under the same circumstances is punishable either as a felony or as a misdemeanor, under either of two statutory provisions, *and the elements of proof essential to either conviction are exactly the same*, a conviction under the felony statute would constitute a violation of the defendant's rights to due process and the equal protection of the laws.

*Id.* at 421–22 (citations omitted) (emphasis added). This rule recognizes the legislature's power to define crimes and affix punishment according to the offender's conduct and culpability.[16] When the elements of one crime overlap with the elements of another crime, or when the elements of one offense encompass the elements of a lesser included offense, some discretion inevitably accrues to the prosecutor, who may tailor the charge to fit the offense.[17] So long as the elements necessary to prove either of two offenses are not identical, the courts have upheld the statutes and allowed the prosecutor charging flexibility.[18]

**16.** *See Mason v. Henderson*, 337 F.Supp. 35, 37 (E.D.La.1972). This decision found no equal protection problem in a statute that treated persons fifteen to seventeen years old who committed capital crimes or aggravated rape different from those who committed other felonies.

**17.** *See State v. Zornes*, 78 Wash.2d 459, 475 P.2d 109, 121 (1970) (en banc) (Hale, J., concurring) (citation omitted):

> If there is a difference in any of the elements of two similar crimes or if either will require a difference in proof, they are not identical and the prosecuting attorney, depending upon the evidence available, has a constitutional discretion to decide whichever charge he will bring.

**18.** The court noted in *State v. Edwards*, 17 Wash.App. 355, 563 P.2d 212, 216 (1977) (footnote omitted):

> [T]he same crime may be committed in ways warranting harsh or lenient punishment. A prosecutor has the discretion to weigh the severity of the offense, criminal propensities of the accused, as well as the past criminal record of the accused, in seeking an appropriate punishment. Equal protection does authorize such unequal treatment upon a rational basis.

It appears that every jurisdiction that has considered the issue finds no equal protection violation when two or more statutes provide different punishments for criminal conduct which is not exactly the same. Many of these cases, however, have gone quite far in finding that the statutes in fact require proof of different elements. *See, e.g., United States v. Koonce*, 485 F.2d 374, 377–78 (8th Cir. 1973) (federal statute allowing heavier penalty for false declarations made before a court or grand jury punishes different conduct than a less severe federal statute punishing perjury for any testimony given under oath); *United States v. Coppola*, 425 F.2d 660, 661–62 (2d Cir. 1969) (federal tax statute requiring three elements to convict defendant of felony tax evasion does not punish same conduct as two misdemeanor tax statutes, each requiring proof of only two of the three felony elements); *Burke v. United States*, 282 F.2d 763 (9th Cir. 1960) (crime of assault with a dangerous weapon, a felony, requires proof of malice and does not punish same conduct as statute making it a misdemeanor to intentionally, without malice, point or discharge a firearm toward another person); *People v. Hulse*, 557 P.2d 1205 (Colo.1976) (vehicular homicide, a felony, requires proof of different elements than is required for criminally negligent homicide, a misdemeanor); *Palmore v. United States*, 290 A.2d at 585 (D.C.App. 1972) (two statutes proscribing possession of pistol by felon require different elements of proof); *State v. Modica*, 567 P.2d 420 (Haw. 1977) (statute making it a felony to carry a pistol or revolver on the person punishes conduct different from statute making it a misdemeanor to have a loaded firearm on a public highway); *Bryant v. State*, 163 Tex.Cr.R. 463, 293 S.W.2d 646, 649 (1956) (statute prohibiting keeping a bawdy house does not punish same criminal conduct as vagrancy statute, although both relate to prostitution); *State v. Reid*, 66 Wash.2d 243, 401 P.2d 988 (1965) (felony statute prohibiting unlawful possession of narcotics does not punish the same conduct as misdemeanor statute proscribing unlawful use of narcotics), *noted in* 41 Wash.L.Rev. 553 (1966). *Cf. Mohn v. State*, 584 P.2d 40, 43 (Alaska 1978) (multiple statutes prescribing different penalties for passing worthless checks are not unconstitutionally vague nor do they vest in prosecutor undue discretion because felony statute requires intent to defraud, an element not required under the misdemeanor statute). *See generally* Ceriani, *Prosecutorial Discretion in the Duplicative Statutes Setting*, 42 U.Colo. L.Rev. 455 (1971).

 This principle is dispositive of the equal protection issue raised by Bell. The misdemeanor and felony provisions contained in AS 28.35.010(a) do not punish the same criminal conduct.[19] A felony violation under AS 28.35.010(a) requires the state to prove something more than a misdemeanor violation: the prosecution must show that the offender has been at least twice convicted of misdemeanor joyriding.[20] It is well settled that statutes may prescribe stiffer penalties for multiple offenders.[21] The misdemeanor and felony provisions in AS 28.35.010(a) draw precisely such a distinction: recidivist joyriders may be punished more harshly than first or second time joyriders. That the prosecutor has the discretion to proceed against a third time offender as either a felon or a misdemeanant does not amount to a violation of equal protection.[22] The prosecutor's discretion may be exercised only in accordance with the legislative mandate requiring the state to prove that the offender is deserving of more severe punishment because of his multiple offenses.[23]

We conclude that AS 28.35.010(a), and Bell's conviction thereunder, survive equal protection scrutiny.

## II. SENTENCE APPEAL

Felony joyriding is punishable by a maximum of three years' imprisonment. AS 28.35.010(a). Bell was sentenced to imprisonment for three years, with none suspended. Bell contends that this sentence is excessive and that the court, in imposing sentence, failed to take proper account of the penal goal of rehabilitation.

 We will reverse the sentence imposed by the trial court only if a review of the record reveals that the sentencing court was clearly mistaken in imposing the sanction that it did.[24] In conducting a review of the sentence, we will determine if the sen-

---

**19.** If the statutory elements of one crime differ from the elements of a related crime, the two statutes do not punish the same criminal conduct, even though a particular act may violate both statutory provisions. For instance, in a case dealing with a double jeopardy claim, we held that a single act of removal of landing skis from an aircraft violated two criminal statutes: larceny and removing parts of an aircraft. *Catlett v. State*, 585 P.2d 553, 558 (Alaska 1978). We noted these two statutes had different elements and protected different interests. *Id.*

**20.** In order to obtain a misdemeanor conviction under the statute, the state must prove that the offender: (1) drove or took a vehicle not his own; (2) without the consent of the owner; (3) with intent to temporarily deprive the owner of possession of the vehicle. In order to obtain a felony conviction, the state must prove an additional element, that the offender (4) has been previously convicted two or more times of the offense of joyriding.

**21.** The United States Supreme Court has upheld the constitutionality of statutes imposing more severe criminal penalties upon habitual offenders. *See Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Graham v. West Virginia*, 224 U.S. 616, 32 S.Ct. 583, 56 L.Ed. 917 (1912). In *United States ex rel. Smith v. Fay*, 409 F.2d 564, 566 (2d Cir.), *cert. denied*, 396 U.S. 857, 90 S.Ct. 124, 24 L.Ed.2d 108 (1969), the court stated:

[W]hen a defendant is charged with a crime which is a felony only by virtue of his prior conviction, that prior conviction is an essential element of the present offense.

**22.** We reject the state's suggestion that AS 28.35.010(a) may *require* felony charges against offenders who have been twice convicted of misdemeanor joyriding. This argument belies the plain language of the statute, which states that the offender "*may* be charged with a felony." (Emphasis added.) The legislature's use of the word "may" indicates its intent to allow the prosecutor to charge a third time offender with a felony or a misdemeanor. While the state makes passing reference to a possible contrary legislative intent, nothing cited in the state's brief or revealed by legislative history suggests that felony charges *must* be brought against third-time joyriders.

**23.** Where the elements of two crimes differ, there is a "legislative standard for the prosecution to use in determining which offenders should be charged under which statute." *See State v. Canady*, 69 Wash.2d 886, 421 P.2d 347, 350 (1966).

**24.** The role of the court and the applicable standard of review in sentence appeals were defined in *State v. Chaney*, 477 P.2d 441, 443–44 (Alaska 1970) (footnote omitted):

When a sentence is appealed, we will make our own examination of the record and will modify the sentence if we are convinced that the sentencing court was clearly mistaken in imposing the sanction it did.

tencing court took proper account of the oft repeated objectives of criminal sanctions, set forth in *State v. Chaney,* 477 P.2d 441 (Alaska 1970).[25]

Further obligations are imposed upon a sentencing court where, as here, it sentences the offender to the maximum penalty. "[M]aximum sentences should not be imposed without some foundation for characterizing a defendant as the worst type of offender." *Galaktionoff v. State,* 486 P.2d 919, 924 (Alaska 1971). In *State v. Wortham,* 537 P.2d 1117 (Alaska 1975), we described some of the factors which may support such a characterization:

> [P]rior criminal convictions, age, military records, employment history, drug or alcohol addiction, presentence report evaluations and recommendations, and behavior which [may] demonstrate an antisocial nature or dangerous propensities which pose a clear risk to the public.

*Id.* at 1120.

■ We believe that the sentencing court adequately considered the *Chaney* criteria and that its decision to sentence Bell to the maximum penalty was not clearly mistaken. The court found that Bell's rehabilitative potential was "almost zero" based upon his prior offenses [26] and the fact that he was on probation for his first felony joyriding conviction at the time he committed this of-

fense. The court believed that Bell should be isolated from society for a substantial period of time because of his tendency to repeat joyriding sprees. Finally, the court indicated that a stiff sentence was required in order to deter the defendant and others from similar conduct and to reaffirm societal norms condemning such behavior.

The court's conclusion that Bell fell into the worst offender category rested primarily on the fact that this was Bell's fourth joyriding conviction and his probationary status at the time he committed this offense.[27] Although not specifically mentioned by the court in imposing sentence, other factors, mentioned in *Wortham,* may support the court's classification of Bell as the worst type of offender.[28] His employment history had been erratic. The presentence report indicated that, in the officer's opinion, Bell would commit the same offense against if presented with the same set of circumstances.[29]

Bell's primary reason for challenging the sentence rests upon the court's alleged failure to take seriously the penal goal of rehabilitation. The record, however, indicates that the court did consider this factor and concluded that Bell's potential for rehabilitation was "almost zero." While rehabilitation is certainly one of the primary goals of

25. These objectives are:
> [R]ehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.

477 P.2d at 444 (footnote omitted).

26. Bell has been twice convicted of misdemeanor joyriding and once convicted of felony joyriding. He has also been convicted of assault and battery on two prior occasions and has committed other minor offenses, including reckless driving and a minor on the premises while serving alcohol.

27. The prior criminal record of the accused may be of "particular significance" to the determination of worst offender status. *State v. Wortham,* 537 P.2d 1117, 1119 (Alaska 1975).

28. Although we will not reverse a trial court's sentencing decision for failure to discuss comprehensively all of the considerations that go into shaping a defendant's sentence, we have expressed our preference for such a procedure. *See Alpiak v. State,* 581 P.2d 664, 665 n.2 (Alaska 1978). The sentencing court's discussion of the various sentencing factors should extend not only to the *Chaney* criteria, but also, when appropriate, to those facts leading the court to the conclusion that the defendant is the worst type of offender.

29. The presentence report further stated: "Mr. Bell did not indicate in any manner that he felt that taking someone else's property was wrong."

sentencing,[30] a court is not required to fashion a sentence to provide for rehabilitation if it finds that the potential for rehabilitation is nonexistent within the time constraints of the penalty for a particular offense.[31] We construe Judge Hodges' comment that this youthful offender's potential for rehabilitation was "almost zero" as applying to the time constraints of the available sentence for the particular offense.

Bell also criticizes the court's failure to consider the report of psychological evaluation in shaping the sentence. Bell's present attorney suggests that some provision for educational and psychological counselling should be included. First of all, of the two psychological reports in the record, only one suggests some kind of counselling, and that was in the context of parole.[32] The trial court did not limit the ability of correctional authorities to arrange for a vocational program as a condition of Bell's parole. Furthermore, Bell's trial attorney[33] stated that he did not place a "great deal of stock" in the psychological report[34] and did not request that Bell receive counselling. While the trial court might well have recommended counselling of its own accord, the omission does not render the sentence clearly erroneous.

Finally, Bell, who is black, contends that his sentence reflects racial bias on behalf of the sentencing judge. He refers to the recent report of the Alaska Judicial Council which indicated that black persons convicted of burglary, larceny and receiving stolen property tended to receive significantly higher sentences than persons of other races.[35] What we stated in *Campbell v. State*, 594 P.2d 65, 69 (Alaska 1979), applies here:

> While this court is mindful of the results of the Judicial Council report and sensitive to the issues regarding racial disparity in sentencing, we are unable to consider a claim of racial bias without some specific allegations that this particular defendant was denied a fair sentencing procedure or received an inordinately higher sentence because of his race. Here, counsel merely cited the Judicial Council study without giving any indication that Campbell's sentence was probably higher than that which would have been imposed upon a defendant of a different race with a like criminal history who committed a similar offense.

Since the record reveals no evidence of racial bias on the part of the trial court,[36] we reject this point.

AFFIRMED.

BURKE, J., not participating.

---

**30.** *See* art. I, § 12 of the Alaska Constitution, which provides, in part:

> Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

**31.** *Bailey v. State,* 548 P.2d 373, 375 (Alaska 1976), makes it clear that sentencing judges need not give reformation or rehabilitation "controlling weight" in every case.

**32.** The report by Dr. Gold concluded, "Parole, with a well-developed plan of vocational and educational development, is seriously suggested . . . ."

**33.** Bell is represented by a different attorney in this appeal.

**34.** At the sentence hearing, Bell's trial attorney stated that the psychological report was the "result of a very brief contact between the psychologist and my client in one interview."

**35.** *See* Alaska Judicial Council, Findings Regarding Possible Racial Impact in Sentencing, Tables VII–4 to VII–7 (Sept. 6, 1978).

**36.** And, as we have indicated, the record did contain evidence, particularly Bell's prior joyriding offenses, that support the trial court's sentence.